IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID HOLT II, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF | : | NO. 10-5510 |
| PENNSYLVANIA, et al. | : | |
|     Defendants. | : | |

## MEMORANDUM OPINION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                        October 8, 2013

### I. INTRODUCTION

By our order of September 18, 2013, ("MSJ Order") (Doc. No. 59), we denied the "Defendants' Motion for Summary Judgment." ("Def. MSJ") (Doc. No. 55). We did so with an extensive footnote stating that there were "genuine issues of material fact which, coupled with the parties' divergent characterizations of those facts and the circumstances which gave rise to this litigation, preclude us from granting the motion." (MSJ Order at 2 n.1.) On September 23, 2013, Defendants filed "Defendants Johnson, Turner-Childs, Brahl and Winterbottom's Motion for Reconsideration." ("Def. MFR") (Doc. No. 60). In their motion for reconsideration, Defendants contend that we committed a clear error when we did not specifically address their defense of qualified immunity. (Def. MFR at 6-7.) Defendants rely upon *Forbes v. Township of Lower Merion*, 313 F.3d 144 (3d. Cir. 2002), where the Third Circuit found that all "dispositions of a motion in which a party pleads qualified immunity [must] include, at a minimum, an identification of relevant factual issues and an analysis of the law that justifies ruling with respect to those issues." *Id.* at 149.

While we feel that the summary judgment record makes clear the presence of these issues of material fact, we will grant Defendants' motion for reconsideration. Upon reconsideration we identify what we see as the "relevant factual issues" and, with explanation of our rationale, once again deny Defendants' motion for summary judgment.

## II. DEFENDANTS' QUALIFIED IMMUNITY DEFENSE

Holt asserts two constitutional claims under 42 U.S.C. § 1983 – one for First Amendment retaliation and the second for denial of equal protection. As the qualified immunity defense applies to these two claims only, we need not revisit Holt's Title VII and Pennsylvania Human Relations Act claims.

### A. Qualified Immunity

In their motion for summary judgment, Defendants do not set out the particulars of the conduct for which they claim immunity except to say:

> Here, reasonable officials in defendants' positions, with the facts they possessed, would not believe that they were violating Holt's constitutional rights when they made certain employment decisions. Additionally, reasonable officials in their position, with the facts they possessed, could reasonable [sic] believe could make those employment decision [sic] without violating his rights. Consequently, the individual defendants are entitled to qualified immunity on Holt's constitutional claims.

(Def. MSJ at 24.) Despite the Defendant's lack of specificity, we will consider with particularity how the qualified immunity defense may apply to the actions of the various defendants.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)

(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Assuming for the purpose of getting us to the critical issue that "the officer's conduct violated a constitutional right," we must determine "whether the right was clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The four individually named defendants – Capt. Steven Johnson, Sgt. Kristal Turner-Childs, Lt. Gerald Brahl, and Capt. Kathy Winterbottom – are, like Plaintiff, employees of the Pennsylvania State Police ("PSP").  Holt alleges that each of the Defendants took adverse employment actions against him, and that these actions were guided by retaliatory or racial animus.

Holt alleges that after he "filed his EEO complaint . . . against Capt. Johnson alleging racial discrimination," Capt. Johnson retaliated against him by failing to assign him as Station Commander of Jonestown or Schuykill Station. (Pl. MSJ at 6.)  Holt also argues that Capt. Johnson discriminated against him when he initiated and sustained the Internal Affairs Division ("IAD") investigation against him; when he denied him the position of Reading Patrol Sergeant; when he reassigned him involuntarily to Staff Service Sergeant at Reading; when he removed him from Officer-of-the-Day roster at Reading; and when he did not assign him to one of the Station Commander posts. (*Id.* at 12-15.)

As to Sgt. Turner-Childs, Holt alleges that she both retaliated against him and subjected him to disparate treatment because of his race when she "failed to properly investigate his EEO complaint and [made] a determination not in [his] favor."  (*Id.* at 8, 16.)  As to Lt. Brahl, Holt alleges that he acted with retaliatory and racial animus when he made racially discriminatory remarks about him, denied him the station command at King of Prussia, and subjected him to an unwarranted IAD investigation. (*Id.* at 9-10, 16-18.)  Finally, as to Capt. Winterbottom, Holt alleges that she retaliated

3

and discriminated against him when she denied him a station command at King of Prussia, subjected him to unwarranted IADs, and removed him from station command at the Poconos. (*Id.* at 10-12, 18-19.)

Defendants do not dispute that they took the above actions. The question before us concerns only whether these actions (or failures to act) were motivated by racial animus or intent to retaliate or discriminate against Holt. We must ascertain the state of mind of the various actors, determine their motivations, and then determine if they could reasonably believe that their motivations were proper. *See, e.g. Grant v. City of Pittsburgh,* 98 F.3d 116, 124 (3d Cir. 1996) (finding that "in evaluating a defense of qualified immunity, an inquiry into the defendant's state of mind is proper where such state of mind is an essential element of the underlying civil rights claim"); *Larsen v. Senate of the Commonwealth of Pennsylvania*, 154 F.3d 82, 94 (3d Cir. 1998) (finding that "[i]n the context of a First Amendment retaliation claim, [the qualified immunity] determination turns on an inquiry into whether officials reasonably could believe that their motivations were proper even when their motivations were in fact retaliatory.").

Whether Defendants' actions were retaliatory and discriminatory, as Holt contends, or legitimate, non-discriminatory, and non-retaliatory, as Defendants contend, is not a question that we are able to resolve on the record before us. Although "qualified immunity is an objective question to be decided by the court as a matter of law . . . [t]he jury determines disputed historical facts material to the qualified immunity question." *Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004) (citations omitted). Therefore, at this pre-trial stage of the proceedings, we are unable to adopt as a matter of law Defendants' position which amounts to the application of qualified immunity based upon their particular, but not proven, characterization of the factual record.

Nonetheless, even if Defendants did act with retaliatory or discriminatory animus against Holt, they would still be entitled to the qualified immunity defense if those constitutional rights were **not** clearly established such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier v. Katz* , 533 U.S. 194, 201 (2001). Here, however, there is no question, and we determine as a matter of law, that Holt's First Amendment right to free speech and his Fourteenth Amendment right to equal protection are clearly established rights of which a reasonable police officer would have known. *See Baldassare v. New Jersey*, 250 F.3d 188, 201 (3d Cir. 2001) (recognizing that the law has been clearly established since at least 1982 that a public employee could not be retaliated against for exercising his First Amendment rights) (citing *Zamboni v. Stamler*, 847 F.2d 73, 80 n.7 (3d Cir. 1988)); *Andrews v. Philadelphia,* 895 F.2d 1469, 1479 (3d Cir. 1990) (finding that the right to be free from discrimination in the workplace is a well-established right that does not entitle a defendant to qualified immunity). Accordingly, Defendants are not entitled to a defense of qualified immunity based on the factual record before us.

### B. Additional Issues

Defendants raise in footnote 3 of their motion for reconsideration two other outstanding legal disputes between the parties. (Def. MFR at 8-9 n.3.) They first raise the question of whether Holt engaged in constitutionally protected activities for purposes of his First Amendment retaliation claim. (*Id.*) To properly plead this claim, a plaintiff must allege "(1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *Miller v. Mitchell*, 98 F.3d 139, 147 (3d Cir. 2010) (quoting *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004)). The first issue of whether a plaintiff engaged in protected activities is a question of law for the court to decide.

*Brennan v. Norton*, 350 F. 3d 399, 412 (3d Cir. 2005).

Holt argues that he engaged in the following protected activities under the Free Speech and Petition Clause of the First Amendment: (1) filing three internal EEO complaints against the PSP, Capt. Johnson, Lt. Brahl, and Capt. Winterbottom alleging racial discrimination; (2) filing two charges with the Pennsylvania Human Relations Commission against the PSP alleging race discrimination; (3) filing a grievance with the Pennsylvania State Troopers Association; and (4) filing this federal lawsuit against the PSP and members of the department. (Pl. MSJ at 4.) Defendants do not dispute that Holt engaged in the above actions. They argue however that Holt's speech is not a matter of public concern, and is therefore not constitutionally protected. (Def. MSJ at 8-10.)

Defendants acknowledge that "[a] public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community." *Brennan v. Norton*, 350 F. 3d at 412. They argue, however, that in this case Holt's speech is not a matter of public concern because he only identifies events that are personal to him, and he does not identify a more widespread pattern of discrimination within the PSP which would arguably be a matter of public concern. (Def. MSJ at 9-10.)

In support of their argument, Defendants point to the Supreme Court case of *Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488 (2011). (Def. MSJ at 10.) *Borough of Duryea* involved a police chief of a small town who was terminated from his position for "having engaged in misconduct, including attempting to intimidate council members." *Id.* at 2492. After "fil[ing] a union grievance challenging his termination" and proceeding to "arbitration pursuant to the police union collective-bargaining agreement," the police chief was reinstated. *Id.* Upon reinstatement, the

borough council issued several directives to the chief, which included a prohibition on working overtime "without the council's 'express permission.'" *Id.* In the ensuing litigation, the chief claimed that these directives were issued in retaliation for him having "filed a union grievance challenging his termination," and that this speech was protected under the Petition Clause of the First Amendment. *Id.*

Such is the case here. The contentions of Sgt. Holt, if accepted by the jury, would clearly be a matter of public concern as they raise serious questions of racial animus and disparate treatment within this statewide policing agency. Defendants cite to *Borough of Duryea* for the proposition that a dispute over the conditions of one's employment rarely implicate First Amendment concerns. (Def. MSJ at 10). Although the Court in *Borough of Duryea* did note "the private nature of many petitions for redress," including union grievances and the filing of lawsuits, the Court did not reach a conclusion as to whether the police chief's speech was protected under the First Amendment. *Id.* at 2490. Instead, the only question before the Court was whether speech under the Petition Clause was subject to the same "public concern" test as speech under the Free Speech Clause. *Id.* at 2489. In holding that speech under the Petition Clause is subject to the same standard, the court also noted, as Plaintiff points out, that when government employees file grievances or a lawsuit over the conditions of their employment it can be a matter of public concern since the litigation serves "as a vehicle for effective political expression and association, as well as a means of communicating useful information to the public." *Id.* at 2500 (internal quotations omitted). As such, speech motivated by private concern can qualify as protected so long as it is a matter which also concerns the public. *See also Rankin v. McPherson,* 483 U.S. 378, 386 n.11 (1987) (stating that "[t]he private nature of the statement does not . . . vitiate the status of the statement as addressing a matter of public concern.").

Plaintiff cites to *Roberts v. Ferman*, 2011 U.S. Dist. LEXIS 78875 (E.D.Pa. July 19, 2011) to support the proposition that Holt's speech is protected under the First Amendment. In *Roberts*, then U.S. Magistrate Judge, and now U.S. District Court Judge Restrepo found that a detective's filing of employment discrimination charges, though grounded in his own interest, "containe[ed] serious allegations of . . . disparities in discipline and other treatment between Plaintiff, as the sole African-American County detective, and other Caucasian and Hispanic detectives." *Id.* at *43-44. Holt argues that his case is similar to *Roberts*, since his complaints also try to bring to light disparities in the treatment between him and non-African-American employees. (Pl. MSJ at 5.)

We find Holt's legal argument persuasive. We accept that questions of racial disparities in treatment within the PSP are relevant to the public's evaluation of that critical law enforcement agency. Therefore, Holt's speech is constitutionally protected for purposes of his First Amendment retaliation claim.

The second legal dispute that Defendants raise in footnote 3 of their motion for reconsideration is whether Lt. Turner-Childs decision to deny Holt's EEO complaint can, as a matter of law, constitute an adverse action for purposes of Holt's First Amendment retaliation claim. (Def. MFR at 9 n.3.) In support of their argument that "such actions can never be considered an adverse action for a First amendment retaliation [sic]," (Def. MSJ at 12), Defendants turn to *Lauren W. ex. Rel. Jean W. v. DeFlaminis*, 480 F. 3d 259 (3d Cir. 2007). In *Lauren W.* the Third Circuit observed "that in employment situations employees sometimes threaten to bring retaliation actions if the employer takes adverse action with respect to them." *Id.* at 268 n.8. Defendants caution us to consider that if we find that Lt. Turner-Childs' decision to deny Holt's EEO complaint can constitute an adverse action, we will be condoning a result where supervisors or employers will "give the

8

complainant what he/she wants, even if the facts do not support it, simply to avoid unpleasant events of litigation." (Def. MSJ at 13.)

Defendants' argument is without merit. We are unprepared to accept the proposition that the agency would refrain from properly undertaking its responsibility simply because a certain ruling might lead to litigation. Further, we do not find that the authority cited by Defendants supports their proposition. *Lauren W.* did not address the question of whether the denial of an EEO complaint may constitute an adverse action for purposes of a First Amendment retaliation claim, nor did it even address the question of whether the plaintiff had engaged in protected activity. *Id.* at 266. Instead, *Lauren W.* considered the completely distinct question of whether there was a causal connection between a school's refusal to release tuition money to a student and the student's assertion of her First Amendment rights under the Individuals with Disabilities Education Act. *Id.* at 266-267. We therefore find that the denial of an EEO complaint is no different than any other internal workplace procedure and, as a matter of law, it may constitute an adverse action for purposes of Holt's First Amendment retaliation claim.

### III.  CONCLUSION

For the foregoing reasons, while we have granted "Defendants Johnson, Turner-Childs, Brahl and Winterbottom's Motion for Reconsideration," we reaffirm our order of September 18, 2013 which denied "Defendants' Motion for Summary Judgment."

BY THE COURT:

/s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE