IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID HOLT II, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF | : | NO. 10-5510 |
| PENNSYLVANIA, et al., | : | |
|     Defendants. | : | |

### MEMORANDUM OPINION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                                  August 14, 2014

      The parties have filed cross motions for reconsideration of certain aspects of our June 25, 2014 order and memorandum opinion (Doc. Nos. 133-34) which ruled on "Defendants' Commonwealth of Pennsylvania, Pennsylvania State Police, Johnson, Winterbottom and Brahl's Post-Trial Motion for Judgment as a Matter of Law or in the Alternative Motion for a New Trial" (Doc. No. 121).[1] "Defendant Brahl's Motion for Reconsideration of the Court's Order Denying Him Judgment as a Matter of Law on Plaintiff's First Amendment Retaliation Claim" and accompanying brief (Doc. No. 138) ("Def. Br.") asks us to reconsider our conclusion that Brahl is not entitled to judgment as a matter of law on the First Amendment retaliation claim with respect to the initiation of the IAD against Plaintiff pursuant to the "day off "incident.  (Doc. No.

---

[1] In this opinion we set out only those facts that are relevant to our analysis.  *See* our June 25, 2014 memorandum opinion (Doc. No. 133) for more detailed background.

134 at 3.b.)  "Plaintiff's Motion for Reconsideration" (Doc. No. 135) ("Pl. MFR.") and supporting brief (Doc. No. 143) ("Pl. Br.") asks us to reconsider our conclusion that Defendant Brahl is entitled to judgment as a matter of law on the Fourteenth Amendment equal protection claim with respect to the roll call comments.  (Doc. No. 134 at 1.f.)  In addition, Plaintiff's motion also asks us to reconsider our November 6, 2013 denial of his motion under Fed.R.Civ.P. 15 to amend his complaint to include a First Amendment retaliation claim against Defendant Johnson for what we have referred to as the "Philips incident."  The parties have filed responses to the motions: "Plaintiff's Response to Defendant Brahl's Motion for Reconsideration" (Doc. No. 144) ("Pl. Resp.") and "Defendants' Response to Plaintiff's Motion for Reconsideration" (Doc. No. 139) ("Def. Resp.").  The matter is now fully briefed and ripe for review.

**I.    LEGAL STANDARD**

A motion for reconsideration is treated as the "functional equivalent" of a motion under Fed.R.Civ.P. 59(e) to alter or amend a judgment.  *Venen v. Sweet,* 758 F.2d 117, 122 (3d Cir. 1985).  "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."  *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir. 1985).  "A proper Rule 59(e) motion therefore must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice."  *Lazaridis v. Wehmer,* 591 F.3d 666, 669 (3d Cir. 2010).

## II.   THE MOTIONS

### A.   Defendant Brahl's Motion for Reconsideration on the First Amendemnt Retaliation Claim

Defendant Brahl urges us to reconsider our conclusion that he is not entitled to judgment as a matter of law on the First Amendment retaliation claim with respect to the initiation of the IAD against Plaintiff for his conduct over the "day off "incident. (Doc. No. 134 at 3.b.) He argues that our conclusion that the "roll call comments [were] evidence of antagonism that was sufficient for the jury to infer that Brahl initiated the IAD against Holt because Holt filed this lawsuit . . . is a clear error of law" in that "they were not said in the intervening period from Brahl's knowledge of Holt's protect [sic] activity and the adverse action." (Def. Br. at 8-9.)

In our memorandum opinion, we set out the causation requirements for a First Amendment retaliation claim:

> In order to . . . show that there was a causal connection between the adverse action and the protected activity . . . "a plaintiff must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citing *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997); *Woodson v. Scott Paper, Co.*, 109 F.3d 913, 920-21 (3d Cir. 1997)). "In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of fact should infer causation." *Id.* (citing *Farrell v. Planters Lifesavers Co.*, 206 F. 3d 271, 281 (3d Cir. 2000)).

(Doc. No. 133 at 30.)   As applied to Brahl's initiation of the IAD investigation on September 15, 2011 over the "day off" incident, we wrote:

> Although Holt concedes that the time proximity between Brahl's knowledge of the lawsuit and the initiation of this IAD

> investigation is not unusually suggestive, he argues that causation can be established by ongoing antagonism and from **the record as a whole.**
>
> We agree. Brahl was informed of the filing of the complaint in this federal lawsuit (the constitutionally protected activity) on July 15, 2011, two months before he initiated this IAD investigation. This is a similar time proximity as the *Williams* case and as the filing of the PHRC complaint against Johnson and Johnson's initiation of the IAD investigation into the Philips incident. Like Johnson's initiation of that IAD investigation, there is also clear evidence of ongoing antagonism between Holt and Brahl. In this instance, the roll call comments, while they do not constitute an adverse action in and of themselves for purposes of the denial of equal protection claim, they certainly constitute evidence of ongoing antagonism towards Holt. As such, Defendants' motion for judgment as a matter of law as to the § 1983 retaliation claim is denied. We will not disturb the jury's verdict as to that finding.

(*Id*. at 33) (citation omitted) (emphasis added.)

In his motion, Defendant Brahl relies on *Kachmar v. SunGard Data Sys., Inc.,* 109 F. 3d 173, 177 (3d Cir. 1997), which stands for the proposition that "[c]ircumstantial evidence of a pattern of antagonism is antagonism that followed the protected conduct, not antagonism before the protected conduct."[2] (Def. Br. at 8.) We acknowledge the argument that *Kachmar* and its

---

[2] In his response, Plaintiff argues that we should not even address Defendant Brahl's motion for reconsideration on the merits since Brahl has "already litigated this issue in [his] Rule 50(b) Motion." *See* Pl. Resp. at 3-4 (relying on *Johnson v. Palakovich,* 2007 WL 2702915, *2 (E.D. Pa. Sep. 12, 2007), which states that "[a] motion for reconsideration is not to be used as a means to reargue matters already argues and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant."). While Brahl did, as a general matter, litigate the issue of causation for purposes of the First Amendment retaliation claim in his Rule 50(b) motion, (Doc. No. 121 at 20-21), we find that the argument he makes and the case law he cites in this motion for reconsideration goes to the more discrete question of whether the roll call comments can constitute evidence of ongoing antagonism. (Def. Br. at 8-11.) Accordingly, and with the benefit of Plaintiff's substantive response to Brahl's motion for reconsideration, (Pl. Resp. at 5-7), we address Brahl's argument on the merits.

progeny establish a bright-line rule that it is the antagonism that followed the protected conduct, not the antagonism before the protected conduct, which matters. *See, e.g., Bailey v. Commerce Nat. Ins. Services, Inc.,* 267 Fed. App'x 167, 170 (3d Cir. 2008) ("Absent temporal proximity, 'circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference.'") (quoting *Kachmar,* 109 F.3d at 177)). This argument however ignores the fact that we found causation not only based upon a pattern of ongoing antagonism coupled with timing, but also based upon "causation [that] c[ould] be established . . . **from the record as a whole**." (Doc. No. 133 at 33) (emphasis added.)

There is strong evidence in "the record as a whole" that the roll call comments were derogatory, antagonistic, and certainly perceived to be discriminatory. (*Id.* at 18-19.)  Trooper Kartsounas testified that Brahl said that Holt "was a lazy piece of shit, that [] Holt was not going to come to King of Prussia barracks and bring the station down after he had built it up, and as long as [Brahl] and Captain Winterbottom were in charge, [Holt] would never get to King of Prussia."  (N.T. 11/01/13 at 82.)   Brahl also called Holt "another f---ing Wayne Mason," Mason being the only other black sergeant that had been under Brahl's command, and, by comparing the two, this led Kartsounas "to believe that it was [a] racial thing."  (*Id.* at 84-85.)  Moreover, Kartsounas testified that these kinds of comments were made at several roll calls in front of "basically all – supervisors and patrol members working that shift."  (*Id.* at 80.)

We cannot ignore this strong evidence of antagonism towards Holt.  While the roll call comments were not stated in the intervening period between Brahl's knowledge of the protected activity (July 15, 2011) and the adverse action (September 15, 2011), they were stated repeatedly just four months before Brahl, with knowledge of the protected activity, initiated the IAD

investigation over the "day off" incident.  We will not deprive the factfinder of the opportunity to consider these comments as part of "the record as a whole" even where uttered before Brahl's knowledge of the protected activity. [3]  Accordingly, Defendant Brahl's motion for reconsideration is denied.[4]

### B.     Plaintiff's Motion for Reconsideration

#### 1.     Fourteenth Amendment Equal Protection Claim With Respect to the Roll Call Comments

Plaintiff urges us to reconsider our conclusion that Defendant Brahl is entitled to judgment as a matter of law on the Fourteenth Amendment equal protection claim with respect to the roll call comments.  (Doc. No. 134 at 1.f.)  We reached this decision after having

---

[3] In his brief, Brahl leverages the roll call comments as having been said prior to his knowledge of the lawsuit to argue that "[t]here is no evidence to support the jury's finding that Brahl initiated the IAD investigation for the 'day off' incident because Holt engaged in protected activity.  *See LeBoon v. Lancaster Jewish Community Center Ass'n,* 503 F.3d 217, 234 (3d Cir. 2007) (finding that plaintiff failed to establish a retaliation claim where nothing in the record shows a 'qualitatively different relationship' prior to the complaint and subsequent to the complaint before the employer engaged in the adverse action.)"  (Def. Br. at 10.)  However, the relationship prior to the protected activity in *LeBoon* involved mere "displeasure" on the part of the defendant at the informal complaints that the plaintiff had been making to members of the Board of the organization through which she was employed.  *Id*.

[4] We also observe that there is evidence in "the record as a whole" from which the jury could infer that Brahl lacked a legitimate reason for initiating the IAD investigation.  Holt testified that members of Troop T call out sick in the same manner as he did "all the time," but Brahl never initiated an IAD investigation against any of them.  (N.T. 10/31/13 at 74.)  Further, while Brahl testified that he initiated the IAD investigation against Holt for taking a day off without providing proper notice to him, there is a question as to whether it was permissible for Holt to notify him through another member of the PSP, which Holt did.  (*Id.* at 69, 73-74; N.T. 11/05/13 at 107-09); *see Farrell,* 206 F.3d at 281 (Third Circuit "caselaw has set forth no limits on what we have been willing to consider" as evidence of causation, which includes "inconsistencies in the defendant's testimony").

6

"conclude[d] that the comments did not, standing alone, 'affect the terms or conditions of [Holt's] employment' such that they constituted an adverse action." *See* Doc. No. 133 at 19 (quoting *Weston v. Pennsylvania,* 251 F.3d 420, 431 (3d Cir. 2001). In his brief, Plaintiff argues that our "fail[ure] to take into account Brahl's statements that Holt 'is not coming down here to KOP station, that he was going to banish him to the Poconos, and that he's not coming down here and f---ing up what we have' as evidence of the effect the comments had on Plaintiff's terms and conditions of employment [] creates a manifest error of law and fact". *See* Pl. Br. at 6 (quoting N.T. 11/01/13 at 95).

We disagree. Firstly, in our decision, we recognized that "Brahl made several derogatory comments about Holt," and cited specifically to some of them, stating that Brahl "call[ed] [Holt] a 'lazy piece of shit,' and 'another f---ing Wayne Mason,' Mason being the only other black sergeant that had been under Brahl's command." *See* Doc. No. 133 at 18 (citing N.T. 11/01/13 at 82, 84-85). We fail to see how our failure to recite every derogatory comment that Brahl may have made about Holt would constitute a manifest error of fact when we acknowledged "that Brahl's comparison of Holt to Mason . . . [is] the functional equivalent of using 'code words' such that a jury could infer, as it did, that those words were uttered with discriminatory intent." (*Id.* at 19.)

Secondly, while we note that Holt purports to challenge our finding that the roll call comments in and of themselves do not constitute an adverse action, *see* Pl. MFR at 4 (citing to our order where we granted the motion for judgment as a matter of law on the equal protection claim with respect to the roll call comments), he does not present the same argument in his supporting brief. In his brief, Holt writes:

7

> Brahl's comments at roll call must be analyzed within the context of the case; to be considered in conjunction with the resulting actions taken against Sgt. Holt so that the jury may infer causation and assess damages . . . Linking Brahl's comments of, "he is not coming down here to KOP station, that he was going to banish him to the Poconos, and that he's not coming down here and f----ing up what we have," to the subsequent information he gave to Winterbottom and her decision to not assign Holt to KOP, the jury could infer causal connection between the comments and Holt's assignment. **In other words, that the comments circumstantially resulted in the adverse employment action of Holt not being assigned to KOP.**

(Pl. Br. at 6-7) (emphasis added.)   This is, in fact, what we found previously, having "accept[ed] that the roll call comments have evidentiary value," and having rejected Defendants' argument that "Holt put forth no evidence for the jury to disbelieve Winterbottom's articulated legitimate [non-discriminatory] reasons for her decisions [to not assign Holt to KOP]."  (Doc. No. 133 at 19, 21.)  Plaintiff's motion for reconsideration of our conclusion that the roll call comments, standing alone, do not constitute an adverse action is therefore denied.

### 2.     Denial of the Motion to Amend the Complaint

Plaintiff urges us to reconsider our November 6, 2013 denial of his motion to amend his complaint under Fed.R.Civ.P. 15 "to include a First Amendment retaliation claim for retaliation after giving information to the local authorities and District Attorney's office" in what was referred to throughout the course of this litigation as the "Philips incident."  (Pl. Br. at 2.)  In denying his motion to amend, we "ma[de] a determination that bringing the amendment would not have any impact upon the case" since Holt's actions did not constitute protected activity for the purposes of a First Amendment retaliation claim.  (N.T. 11/06/13 at 26.)  Holt argues that the holding in *Lane v. Franks,* 134 S. Ct. 2369 (2014), which was decided by the Supreme Court

on June 19, 2014, constituted an intervening change of law which "broadened the standard for protected activity" such that Holt's actions would now be considered protected activity under the First Amendment.[5]  (Pl. Br. at 2-3.)

We disagree.  *Lane*, which came to the Supreme Court from the Eleventh Circuit, did not constitute an intervening change in law in the Third Circuit.  To the contrary, it brought Supreme Court precedent in line with that of our circuit.  *Reilly v. Atlantic City,* 532 F.3d 216 (3d Cir. 2008), held that "[w]hen a government employee testifies truthfully [in court], s/he is not simply performing his or her job duties," such that his or her "truthful testimony is protected by the First Amendment."  *Id.* at 231.  In *Lane*, the Supreme Court held similarly, finding that "the First Amendment [] protects a public employee [] who provided truthful sworn testimony, compelled by subpoena, outside the course of his ordinary job responsibilities," thereby overturning the decision of the Eleventh Circuit which held to the contrary.[6]  *Id.* at 2374-75.

---

[5] In a footnote, Defendant argues that Plaintiff's July 2, 2014 motion to reconsider our November 6, 2013 denial of his motion to amend his complaint is untimely since "Plaintiff had twenty eight days from that date to file a motion requesting this Court [to] reconsider its ruling on that issue."  *See* Def. Resp. at 7 n.3; *see also* Fed.R.Civ.P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.")  Plaintiff does not respond to this timeliness argument.

We certainly recognize that Plaintiff filed his motion for reconsideration more than 28 days after we denied his motion to amend his complaint.  We do however observe that Plaintiff's motion was filed within 28 days of the Supreme Court's June 19, 2014 decision in *Lane*, which Plaintiff contends constitutes an intervening change in controlling law.  Although we are unaware of any authority which holds that the 28 day clock starts running when the alleged intervening change of law occurs – as opposed to the court's entry of judgment – we are hesitant to reject Plaintiff's motion for reconsideration on timeliness grounds.  Accordingly, and with the benefit of Defendants' substantive response on this issue, (Def. Resp. at 5-7), we address Holt's argument on the merits.

[6] In fact, the Supreme Court recognized this circuit split between the Third and Eleventh

We further conclude, even if we were to accept that *Lane* constituted an intervening change in law, that it would not support Plaintiff's position. The holding in *Lane* – that "the First Amendment [] protects a public employee [] who provided truthful sworn testimony, compelled by subpoena, outside the course of his ordinary job responsibilities" – would not lead us to conclude that the First Amendment also protects Holt for having approached the District Attorney outside of a formal court setting. *Id.* at 2374-75. Moreover, in the event that we were to find a factual similarity between *Lane* and the "Philips incident," we would still be compelled to deny Plaintiff's motion given the Supreme Court's determination in *Lane* that the defendant was entitled to qualified immunity since the First Amendment protection of a public employee's sworn testimony outside of the course of his ordinary job responsibilities was not a right that was "clearly established [in the Eleventh Circuit]" at the time the testimony was made.[7] *Id.* at 2381-83. For these reasons, we deny Plaintiff's motion to reconsider our denial of his motion to amend his complaint.

---

Circuits, having stated that it "granted certiorari to resolve discord among the Courts of Appeals as to whether employees may be fired—or suffer other adverse employment consequences—for providing truthful subpoenaed testimony outside the course of their ordinary job responsibilities. *Compare* [the Eleventh Circuit's decision in *Lane*], with *e.g.*, *Reilly* [the Third Circuit case]." *Lane,* 134 S. Ct. at 2377.

[7] Interestingly, for purposes of qualified immunity, the plaintiff in *Lane* argued to the Supreme Court that the *Reilly* decision of the Third Circuit put his employer on notice that his firing was unconstitutional. *Lane,* 134 S. Ct. at 2377. This further buttresses our conclusion that *Lane* brought no intervening change in law in the Third Circuit.

## III. CONCLUSION

In light of the above, Defendant Brahl's and Plaintiff's respective motions for reconsideration are denied. An appropriate order follows.

BY THE COURT:

/s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE