IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID HOLT II, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF | : | NO. 10-5510 |
| PENNSYLVANIA, et al., | : | |
|     Defendants. | : | |

## **MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                        October 30, 2018

Before the Court is the "Post Trial Motion by Plaintiff David Holt Pursuant to Fed. R. Civ. P. 50(b) and 59 For a New Trial" (Doc. 263) and Defendants' response (Doc. 266), to which Plaintiff has not filed a reply. For the reasons that follow, we will deny the motion.

**I.    PROCEDURAL BACKGROUND**

Plaintiff's motion follows the third of three trials convened concerning his complaint, filed in 2010 and amended twice in 2011, where he asserted that he suffered discrimination and retaliation during periods of his employment with the Pennsylvania State Police (the "PSP"). The first trial, in 2013, resulted in a partial verdict, leading to a second trial in 2014 on the claims remaining. That jury found the PSP and various individual defendants liable on particular theories and for particular conduct and awarded substantial damages. Pertinent to this motion, the jury determined that the decision of Plaintiff's commanding officer, defendant Captain Steven Johnson, not to assign him a station commander position in July 2009 constituted unlawful retaliation for Holt's earlier complaint to the PSP that Johnson had engaged in race discrimination. The jury awarded $250,000 in compensatory damages for this act of retaliation. On Defendants' post-trial motion, we concluded that there was not legally sufficient evidence of

causation from which the jury could have returned a finding of liability for this alleged act of retaliation by Johnson. We granted judgment to Defendants as a matter of law. (Doc. 201 at 26.) We also offered a conditional ruling on the alternative defense motion for a new trial. We concluded that if a jury could have found that some of the emotional distress about which Holt testified was caused by Johnson's decision not to give him a station command in retaliation for his complaint, a $200,000 remittitur would be appropriate, reducing the jury's verdict on this claim from $250,000 to $50,000. (*Id.* at 77-78.)

Plaintiff took an appeal. The Court of Appeals found that the evidence supporting this claim against Johnson was legally sufficient and that the jury permissibly drew an inference that Johnson's hiring decision was retaliatory such that we erred when we set aside the verdict on the grounds that Holt failed to establish a causal nexus between his protected activity and Johnson's decision not to appoint him. The Court of Appeals reversed our order and directed us "to reinstate the jury's verdict and its damages award, subject to the conditional ruling limiting that award, which was not challenged on appeal." *Holt v. Commonwealth of Pennsylvania,* 683 Fed. App'x. 151, 158 (3d Cir. Mar. 20, 2017).[1] The Court simultaneously entered a Judgment Order, which was certified and issued in lieu of a formal mandate on April 10, 2017, that "the matter is remanded with direction to the Magistrate Judge to reinstate the jury's verdict with respect to that claim and reinstate the damage award for that claim, subject to its conditional ruling limiting that award." (Doc. 216.) We then offered Plaintiff the opportunity to select the remitted award of $50,000 or have a new trial on damages on this claim, pursuant to *Kazan v. Wolinski*, 721 F.2d

---

[1] The Court of Appeals otherwise upheld the decision to enter judgment as a matter of law notwithstanding the verdict to Defendants as to the four other alleged adverse employment actions challenged in the appeal.

911 (3d Cir. 1983). *See Kazan*, 721 F.2d at 914 (directing the lower court to "order[] plaintiff to remit the portion of the verdict in excess of the maximum amount supportable by the evidence or, if the remittitur [is] refused, to submit to a new trial"). (Doc. 217.) Plaintiff elected a new trial. (Doc. 218.)

This third trial was held on August 9-10, 2017. It concerned solely the question of the amount of compensatory damages due to Plaintiff for the July 2009 decision of Captain Johnson to pass over Holt when making two station command assignments within Troop L. The jury was told that a finding had already been made that this decision was an act of retaliation against Holt for his engaging in the protected activity of making a complaint of discrimination based on his race. (N.T. 8/10/17, Doc. 254, at 71.) The jury returned an award of $2,700 in compensatory damages. (Doc. 240.)[2]

Plaintiff seeks a new trial on damages on this claim. (Doc. 263.) He contends this is warranted "[b]ecause of clear judicial error, such as": (1) the admission of evidence concerning "other events the PSP asserted is a cause of Holt['s] actual harm"; (2) the failure "to charge under Staubs (a Cat Paws instruction)"; and (3) "the confusing jury interrogatories"; all of which he asserts (4) led the jury to "speculate to causation," resulting in an "unreasonable, shocking, [and] invalid" damage award. (*Id.,* Pl. Mot. ¶ 33.) We address these four contentions below.

## II. LEGAL STANDARDS

Rule 50(b) provides that, after the entry of judgment, a party "may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial

---

[2] The Court also took evidence concerning Plaintiff's claim for lost wages associated with this retaliatory action, although the parties resolved that aspect of their dispute following conferences with Magistrate Judge Timothy Rice.

3

under Rule 59." Fed. R. Civ. P. 50(b). Rule 50(b) contemplates the moving party having first moved for judgment as a matter of law pursuant to Rule 50(a) before the case was submitted to the jury. The motion is evaluated under the same standard as a motion filed at the close of evidence under Rule 50(a): whether the evidence in the record could properly support the verdict, viewing the evidence and all inferences in the light most favorable to the non-moving party. Plaintiff did not make a Rule 50(a) motion for judgment as a matter of law during trial. He thus waived any right to relief under that rule.

Rule 59 separately provides that the Court may, on motion, grant a new trial to any party. The rule does not identify the bases for a new trial to be granted but instead references "any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The rule has been understood to apply, *inter alia*, when the verdict is against the weight of evidence or the verdict is either excessive or inadequate. *See, e.g., Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525, 540 (1958) (noting that federal trial judges have "discretion to grant a new trial if the verdict appears to [them] to be against the weight of the evidence"); *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 163 (3d Cir. 2018) (noting that trial court should grant motion for new trial "only when the great weight of the evidence cuts against the verdict").

The party moving under Rule 59 must also establish that it is prejudiced by the trial error. *See City Select Auto Sales Inc.*, 885 F.3d at 153 (considering whether "a miscarriage of justice would result if the verdict were to stand"). *See also Reynolds v. Univ. of Pennsylvania*, 747 F. Supp.2d 522, 533 (E.D. Pa. 2010) (reciting miscarriage of justice requirement and noting that "[t]his high standard provides due respect for the jury's primary function as factfinder"). This component of Rule 59 is also reflected in Rule 61, "Harmless Error," which similarly focuses

4

upon the impact of a trial court's action upon the "substantial rights" of the allegedly aggrieved party and provides:

> Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

Fed. R. Civ. P. 61.

## III. DISCUSSION

Plaintiff's motion consists of 36 numbered paragraphs, unaccompanied by a memorandum of law or any other clear delineation of his allegations of error. We understand him to seek to vacate the jury's award on the grounds that: (1) the Court permitted the PSP to point to other causes of the damages to which Holt testified, which allegedly led the jury to reduce his award improperly; (2) the Court should have instructed the jury that the PSP, as the employer, is liable to Holt for damages resulting from an adverse employment action even if the decisionmaker did not act due to a biased intent but where the bias of another supervisor affected the final decision – the "cat's paw" theory recognized in *Staub v. Proctor Hospital*, 562 U.S. 411 (2011); (3) that the Court's jury interrogatories allowed the jury to believe it could find that no actual damages flowed from the illegal employment action and that the questions did not allow the jury to award damages against each defendant; and (4) that, due to confusion created by these alleged legal errors, the jury returned an unreasonable verdict on a claim that the Court had previously valued at $50,000 and that the prior jury valued at $250,000. *See* Pl. Mot. ¶¶ 13-18, 24-26, 27, 32-33. We disagree that any of these four arguments provide a basis for a new damages trial on this claim.

### A. Admission of evidence on causation of damages

Plaintiff first complains that the jury was confused about its role in deciding the compensatory damages flowing from Captain Johnson's retaliation where Defendants were allowed to introduce evidence of a prior discipline Holt sustained and other circumstances that might have caused or contributed to his emotional distress. Plaintiff appears to suggest that this evidence may have led the jury to conclude that he did not deserve compensation, even though he had proved in the prior trial that Johnson unlawfully retaliated against him. We disagree.

As the transcript demonstrates, the line of questioning about other employment actions taken against Holt that Plaintiff now challenges was directly relevant to the issue of the harm that Holt suffered attributable to this particular act of retaliation by Johnson. This question of the extent of Holt's compensatory damages on this claim was the entire reason for the third trial. Inasmuch as the compensation due to Holt for a number of other employment actions had already been determined, the parties had to tread carefully through the often inter-related questions of discrimination and retaliation in various aspects of Holt's employment during that time. It was appropriate, nonetheless, for the jury to hear what else was happening to Holt around this time that could have accounted for the distress and the harm to his career that he claimed. Among these other incidents were the fact that in the first few months of 2009 he learned that he was not assigned to a patrol sergeant assignment he wanted and that he was instead "involuntarily" assigned to a staff services position. In addition, in April 2009, a notice of disciplinary action was lodged against him.

On direct examination, Holt testified that the announcement in July 2009 that others had been selected to fill the vacant station command positions left him feeling "devastated," "embarrassed," and "humiliated," because he had made it known that he transferred to Troop L desiring a station commander position. He testified that he felt "betrayed" when he was passed

over and that he then realized that he "was perceived to be incompetent" by his superiors. (N.T. 8/9/17, Doc. 243, at 26-27, 49.) He further testified that with this decision, he realized that he was "not part of the team" and he stopped attending trooper social events as a result. (*Id.* at 43-45.) He testified that after he learned that he did not receive the position, his family life also changed, in that he treated his wife and daughter harshly and then isolated himself from his family at large to try to control angry outbursts that he had begun to manifest. (*Id.* at 28-30, 42-43.) While he acknowledged that stress comes with the job of a trooper, he insisted that nothing additional was distressing him in July 2009 aside from not receiving a station command and the perceived effect on his reputation attendant to that action. (*Id.* at 62.) He saw a therapist weekly for five or six months and consulted with his family physician for anxiety and depression medications. (*Id.* at 28, 30-32.) His counsel elicited from him testimony concerning the out-of-pocket costs associated with this treatment. (*Id.* at 32-38.)

On cross-examination, defense counsel elicited testimony from Holt that he first took medication for depression sometime in late 2008, prior to his non-assignment to the station commander positions. Holt also testified, however, that his dosage was increased in 2009 due to work-related problems. (*Id.* at 87-90.) Defendants also elicited testimony that called into question the veracity of his account that the source of his stress was the failure to secure either station commander position and that it was *this* event that triggered the decline in his perceived reputation and esteem within the community, as well as his diminished sense of confidence and optimism about his future with the PSP. The jury heard through cross-examination that he had received notice in April 2009 that he would, at a later date, be formally disciplined for a

7

particular action unrelated to the prospective station commander positions,[3] and was left waiting throughout the spring, summer, and fall of 2009 to learn what the discipline would be. The jury also heard that around this time, when he had sought a patrol sergeant position in the Reading area, he instead received an "involuntary transfer" to a "dead end" staff services position. (*Id.* at 62-66.)[4] In light of the overlap in the timing, it was appropriate for the jury to hear about these events and to determine how much to credit or discredit Holt's attempts to dismiss their impact.

An example of the questioning challenged by Plaintiff is instructive in showing how the testimony emerged and its relevance. At one point, defense counsel probed whether the pendency of the imposition of discipline weighed on Holt between April 7, 2009, when he received a disciplinary action report, and November 12, 2009, when the discipline was ultimately issued. Holt denied that it weighed on him. (*Id.* at 64-66.) Questioning on this subject continued later in the cross-examination:

> Q. Sergeant Holt, before we took a break, we were talking about the impact that these other things that were going on in 2009 had upon you and you had indicated that they had no impact, is that correct?
>
> A. When you say other things, counsel, what are you referring to?
>
> Q. The station command – I'm sorry the Reading station patrol sergeant position, the demotion or – involuntary transfer to staff services and the impending discipline. It was your testimony that they had no impact upon you whatsoever.
>
> A. The discipline I said did not have any impact. I wasn't happy about not getting the Reading patrol sergeant's job and I wasn't happy about being involuntarily transferred by Johnson. But the

---

[3] Holt shared on re-direct examination that he was disciplined for a charge of interfering with an outside agency's investigation. (N.T. 8/9/17, Doc. 243, at 109.)

[4] As was discussed more at the prior trial, these events occurred in the early months of 2009 and were the subject of an internal complaint that Holt filed in April 2009.

> discipline didn't cause me – or the impending discipline did not cause me any extra added stress[,] … [n]ot to the degree of not getting those two station command positions because they were the two most prominent positions that were available in the troop. And those are the two that I wanted, one of the two.

(*Id.* at 76-77.) Plaintiff further committed to this position:

> Q. … It's your testimony then that the not getting the station command positions had more of an impact upon your future career endeavors than the staff services position?
>
> A. Absolutely.
>
> Q. Okay. And – okay. And is it also your testimony that whatever discipline that was going to be imposed on you in regards to Sergeant Johnson's DAR or Disciplinary Action report, that … not getting the two station command positions had more of an impact upon your career than ultimately whatever discipline was imposed.
>
> A. Absolutely.

(*Id.* at 77.) Defense counsel then confronted Holt with prior testimony in which he suggested that what damaged his career the most *was one of those other employment actions*,[5] not Johnson's decision to bypass him when making station command assignments in Troop L in July 2009:

---

[5] These other employment actions were put to the jury at the prior trials as alleged acts of discrimination. While the jury in the first trial was unable to reach a verdict as to any of the claims implicating Johnson, the jury in the second trial made a finding that Holt failed to prove race discrimination in the following conduct of Johnson: (1) not assigning him to the Reading Patrol Sergeant position in January/February of 2009; (2) reassigning him to the Staff Services Sergeant position on March 13, 2009; and (3) not assigning him to the Station Commander positions at either the Jonestown or Schuylkill Haven stations in July 2009. (Doc. 170.) The jury repeated this finding three times in its verdict sheet, as Plaintiff brought discrimination claims based on these employment actions under the Fourteenth Amendment equal protection clause (against Johnson), Title VII (against the PSP for actions taken by Johnson), and the PHRA (alleging Johnson aided or abetted the PSP). (*Id.* at 1-3.) The only finding for which the jury in this third trial could award damages based upon Johnson's conduct was the finding that the denial of the station commander positions was an act of retaliation in violation of Title VII.

9

> Q. [after directing Holt's attention to a transcript] Okay and you see in that testimony there was questioning about the impact of being involuntarily transferred to the staff services sergeant position, do you see that?
>
> …
>
> Q. Okay. You agree with me that what you just read you were talking about the impact that being involuntarily transferred to the staff services position would have on your career in this prior testimony, is that correct?
>
> A. That's what it says.
>
> Q. Okay. And your answer starting on page 57, line 2 is "and when this happens [the assignment to the staff services position], at that level, it's absolutely catastrophic because in most cases, you'll never get promoted to lieutenant when you're involuntarily assigned like that and because the consensus is that you can't do your job." Is that correct as to what it says there?
>
> A. That's correct.

(*Id.* at 80, 81.)

Plaintiff suggests that the jury was tainted by this knowledge that the PSP apparently thought so poorly of his work that it subjected him to discipline and an undesirable transfer to a staff services position. This cross-examination, however, was clearly within the Court's discretion to permit as it related to the open question of what emotional harm Holt suffered from the sole retaliatory act of Johnson not giving Holt a station command.[6] We believe it was sufficiently clear to the jury that the subject of other discipline or transfers imposed were raised only in relation to whether there were other sources for Plaintiff's distress and that the jury

---

[6] This was the only question that remained for disposition of Holt's case. The jury could *only* award damages for retaliation by Johnson against Holt for making a complaint alleging race discrimination where the actionable retaliatory act was the non-assignment to either of the station commands in July 2009. This jury was not to award damages for other grievances Holt had against Johnson, which were the subject of prior litigation.

understood that its task was to determine the compensation that would make Holt whole for the injury he suffered when he was not given one of the two station commands available in July 2009. We see no error in the admission of evidence concerning other contemporaneous events in Holt's work life that could have impacted the emotional distress about which he testified and for which he sought compensatory damages. This argument does not provide a basis for a new damages trial.

### B. The absence of a "cat's paw" instruction

We are rather puzzled by Plaintiff's next allegation, as it concerns a legal issue which had not been presented to the Court prior to or during the damages re-trial and which is not well-briefed now. Plaintiff makes two passing references in his motion to an alleged defect in the jury instructions that he believes warrants a new damages trial:

> 27. The charge was insufficient. The Charge was objected to prior before the jury was excused to deliberate[.] The Charge sought but denied was Cat's Paw instruction.
>
> …
>
> 33. Because of clear judicial error, such as to allow evidence into the trial on "causation." Viz, allow other events the PSP asserted is a cause of Holt "actual harm, or not to charge under Staubs (a Cat Paws instruction), and the confusing jury interrogatories, the Damage Jury speculated to causation, and its award is from speculation, prejudice sympathy, and inadmissible evidence. Ergo, the Damage Jury's $2,700 award is unreasonable, shocking, invalid, and shows the jury was confused and/or failed to follow the law to award a reasonable damage amount, for the illegal conduct of each defendant.

(Pl. Mot. at 6, 8.) Defendants assert that "the Court properly refused to provide instruction on the Cat's Paw theory of liability to the jury." (Def. Opp. at 15, § F.)

The cat's paw doctrine, as discussed in *Staub v. Proctor Hospital*, 562 U.S. 411 (2011), permits liability to be assigned to an employer for the discriminatory or retaliatory animus of a

supervisor who was not the decisionmaker but who caused the final adverse action or exerted a level of influence over it by deliberately convincing the ultimate decision-maker to take the action. *Staub* concerned employer *liability*, not damages. The 2017 trial, however, was a trial only on damages. Liability was not before the jury. Therefore, there was no basis for a cat's paw instruction.

This argument may also be dismissed on the ground of waiver. Plaintiff's pretrial memos and proposed points for charge submitted on July 31, 2017 (Doc. 224) made no request for such an instruction, nor did Plaintiff raise this subject in the final pre-trial conference nor in any discussions with counsel on either of the trial days. *See* Docs. 243, 252 & 254 (search in trial transcripts for "cat's paw" and "Staub" yield no results). A new trial will not be granted on this claim of error.

### C. "Confusing" jury interrogatories

The third alleged legal error that Plaintiff believes led the jury to speculate about causation of harm and render an unreasonable verdict is what he characterizes as "confusing" jury interrogatories. He contends that the first interrogatory to the jury allowed it to believe that it could deliberate on the question of whether the retaliatory action caused any damages and that it improperly suggested to the jury that it could find no actual damages from the unlawful conduct. He contends that the second interrogatory was also improper in that it did not allow the jury to make a specific award as to each defendant, presumably the PSP and Johnson. (Pl. Mot. ¶¶ 25-26.) Defendants contend that Plaintiff has not met his burden to show both that an error was made with respect to the interrogatories and that the error "was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice." (Def. Br. at 8, citing cases.) *See also id.* at 9 (citing Fed. R. Civ. P. 61).

Courts have recognized that the harmless error standard of Rule 61 applies to mistakes

alleged to have been made by the court in crafting jury interrogatories on the verdict form. *See, e.g., Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 826-28 (7th Cir. 2010); *Desmond v. Mukasey*, 530 F.3d 944, 967 (D.C. Cir. 2008). The moving party bears the burden of establishing that an alleged trial error affected that party's substantial rights such that the error was not harmless and the interest of justice requires relief. *See Palmer v. Hoffman*, 318 U.S. 109, 116 (1943); *Morgan v. Covington Township*, 648 F.3d 172, 179 (3d Cir. 2011).

The verdict form used at trial and about which Plaintiff complains required the jury to answer the following questions:

> 1. Has plaintiff proven that he suffered compensable harm as a result of not being assigned a Station Commander position in July 2009?
>
> _____YES          _____NO
>
> If your Answer is "Yes", please go to Interrogatory 2. If your answer is "No", your deliberations are complete. Please signal my deputy clerk.
>
> 2. What amount of money do you award plaintiff to compensate him for the actual harm that he has proven he suffered as a result of not being assigned to the position of Station Commander?
>
> $_____

(Doc. 240.) The jury ultimately answered "yes" to Interrogatory No. 1 and proceeded to award $2,700 to Plaintiff in Interrogatory No. 2.

The verdict form and the accompanying jury charge were the subject of much discussion in advance of and during trial as the Court and counsel attempted to navigate this damages-only trial on a claim that was merely a portion of Plaintiff's much larger complaint against his employer and several other individual supervisors for a series of circumstances and incidents related to his employment. The final verdict form was crafted following review of the parties'

13

proposals --- which differed greatly from each other --- and Third Circuit Model Instructions on damages and the availability of nominal damages.[7] When the jury returned its verdict, it had answered question No. 1 *in Holt's favor*, agreeing that, as a result of not being assigned a Station Commander position in July 2009, he had suffered harm for which compensatory damages were available. The jury then set forth in its answer to question No. 2 the amount of compensable harm it found had been established at trial. The jury's verdict thus fulfilled the mandate of the Court of Appeals that the compensatory damages award be reinstated, subject to our conditional ruling remitting that award and Plaintiff's subsequent decision to reject the remittitur and instead pursue a new damages trial. *See* Docs. 217, 218.

If the Court erred in first confirming with the 2017 jury that Plaintiff had demonstrated that he suffered compensable harm, then the error must be subjected to a Rule 61 analysis. *See* Fed. R. Civ. P. 61 (instructing the court to "disregard all errors and defects that do not affect any

---

[7] Plaintiff's initial suggestion for jury interrogatories asked the jury to make an award of any of six line items for different types of damages and, barring any award in those categories, instructed it to then find nominal damages in the amount of $1.00. (Doc. 226.) *See also* Doc. 234 (subsequent suggestion by Plaintiff retaining reference to nominal damages). Defendants' proposed verdict form omitted any reference to nominal damages or a $1.00 award and instead asked first whether Plaintiff "prove[d] that he suffered any actual harm/injury as [a] result of him not be[ing] assign[ed] to the position of Station Commander in July of 2009" and then, assuming the jury answered affirmatively, soliciting the amount of money the jury awarded to compensate Plaintiff "for the actual harm/injury that he proved that he suffered as a result of not being assigned to the position of Station Commander[.]" (Doc. 230.) This approach appeared to be supported by guidance from the Third Circuit. *See, e.g., Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 452 (3d Cir. 2001) (noting that "nominal damages may be awarded only in the absence of proof of actual injury"); Third Circuit Model Civil Jury Instructions, Comment to § 5.4.5 (citing same). *See also* Model Instr. 5.4.1 (Title VII Damages – Compensatory Damages – General Instruction) (describing award for "an amount that will fairly compensate [plaintiff] for any injury [he] actually sustained as a result of [defendant's] conduct" and that "[plaintiff] must also show that [defendant's] act played a substantial part in bringing about the injury"). The jury instruction ultimately given by the Court concerning compensatory damages is found at N.T. 8/10/17, Doc. 254, at 71-74.

14

party's substantial rights"). We conclude that even if the Court should not have posed question No. 1 to the jury, Plaintiff's rights were not substantially compromised, as the jury found in favor of Holt as to this question and proceeded to award him damages. Plaintiff argues that the presence of this question on the verdict sheet sowed doubt in the mind of the jurors as to whether Holt should be awarded compensatory damages and that this doubt caused the jury to reduce its award of compensatory damages. This contention, however, finds no support in the record and is purely speculative.[8]

We cannot agree that any error here warrants setting aside this jury's verdict and granting a new trial. Any error arising from the manner in which the Court presented these interrogatories to the jury is, at most, harmless.

### D. Whether the $2,700 jury award was against the weight of the evidence or otherwise unreasonable as a matter of law

Finally, Plaintiff contends that the jury award was not only the product of the alleged legal errors described above but also the result of "sympathy, bias or prejudice." (Pl. Mot. ¶ 23.) He suggests that these improper factors must have been at play, as the $2,700 award "was shockingly inexplicable" based upon the evidence relating to compensatory damages. (*Id.* ¶ 29.) He contends:

> 30. The Jury award of $2700 is against the weight of the evidence and/or is an unreasonable amount as a matter of law. The low amount demonstrates the jury was confused, bias[ed], prejudiced, acted with sympathy, did not understand or follow the jury instructions, or acted on self-learned evidence not presented to the Jury and in the record….
>
> 31. The Jury award as a matter of law is shocking to the judicial

---

[8] As we set forth in the next section, there appears to be a proper basis for the award the jury rendered and one which would not appear to have been related in any way to the first interrogatory found on the verdict sheet.

>        conscious [sic]; is the product of bias, prejudice, predisposition
>        from self-examination of the facts, or sympathy.

(*Id.* ¶¶ 30-31.)

As our Court of Appeals has instructed, we may overturn a jury verdict on the ground that it is against the weight of the evidence "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991). We cannot agree with Plaintiff that this verdict shocks the conscience, however surprising or disappointing it may have been to him. This damages award was limited to the very particular retaliatory action of the non-assignment to a station command position, which itself involved no change in pay but which would have provided other perks such as use of a state car and additional prestige and recognition within the PSP. Plaintiff's testimony regarding the psychological impact on him would have been sufficient to support an award had the jury agreed that the non-assignment in July 2009 was a substantial factor in creating emotional distress for Holt. There was also evidence, however, from which it could find that any emotional distress he suffered during this time was not substantially attributable to this retaliatory action but rather arose from other causes. *See, e.g.,* N.T. 8/9/17, Doc. 243, at 67 (Holt's testimony that he knew that, with discipline pending against him, he would not be given a station command in July 2009).

Defendants have suggested that the jury's verdict reflects its determination to compensate Holt principally for out-of-pocket expenses he incurred as a result of the failure of the PSP to give him a station command in 2009. They note that the jury could extrapolate from the evidence admitted at trial that Holt would have spent almost $1,300 in prescription co-pays for medications to treat acid reflux and depression between 2009 and when he received a station

command in 2011. Defendants similarly estimate that Holt's doctor visit co-pays for these conditions would total approximately $350 based upon his testimony. Accounting for $1,000 in automotive costs that Holt could have avoided had he received a state vehicle in 2009, Defendants point to a reasonable path by which the jury could have reached its award of $2,700. (Def. Br. at 15-16; N.T. 8/9/17 at 32-39.) We agree that there was sufficient evidence from which the jury could reasonably have rendered the verdict it did and cannot say that this verdict is against the weight of the evidence. While Holt testified that he was emotionally distressed during this period, the jury was free to discount the credibility of that testimony in light of the evidence of other sources of distress during that time and particularly where Holt's prior testimony suggested that what was most devastating to his career were other incidents in his employment with the PSP.

We do not see any reason to suspect from this award that the jury was biased or prejudiced, or that it rejected or was confused by the Court's instructions. This verdict does not shock our conscience nor does it cry out to be overturned.[9] *See Williamson*, 926 F.2d at 1353. We will not vacate the verdict on this ground.

## IV. CONCLUSION

For the reasons set forth above, we conclude that Plaintiff has not met his burden under Rule 59 for a new trial regarding the damages owing to him for retaliation by Captain Steven

---

[9] Plaintiff suggests that our remitted award following the 2014 trial somehow sets a floor for his recovery on the damages re-trial on this claim. While we found the $50,000 figure to be reasonable in the circumstances of the verdict returned by the 2014 jury, that finding in no way limited the jury hearing the testimony in 2017. Plaintiff took his chances when he chose to proceed with a new damages trial rather than accept the remittitur. He points to no authority suggesting that a lower verdict on re-trial in these circumstances renders the verdict legally unreasonable.

17

Johnson in July 2009 in violation of Title VII. As was his right, his damages claim was put to a new jury in August 2017. That jury was presented by both sides with evidence relevant to his claim of damages. After multiple conferences with counsel, at which the objections and concerns of Plaintiff were heard, the Court instructed the jury in accordance with Third Circuit authorities and provided jury interrogatories that aligned with the charge. Any error with regard to the interrogatories posed to the jury is harmless under Rule 61. The verdict of $2,700, while much lower than the jury awards on other claims in the prior trials, is not unfair or unreasonable as a matter of law. There is no basis for another damages trial on this claim. An appropriate order follows.

BY THE COURT:


 /s/ David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE