IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID HOLT II,     :    CIVIL ACTION
  Plaintiff,      :
           :
  v.         :
           :
COMMONWEALTH OF   :    NO. 10-5510
PENNSYLVANIA, et al.,   :
  Defendants.     :

## <u>MEMORANDUM OPINION</u>

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE        April 30, 2020

  Before the court is a petition for attorney's fees in an employment discrimination and retaliation case brought by Sgt. David Holt II ("Holt") against the Pennsylvania State Police ("PSP"), as well as several state police personnel.  The suit concerned various aspects of Holt's employment over a three-year period that were alleged to have violated his rights under federal and state law.  As a result of three different jury verdicts, and following two appeals, Plaintiff established violations by three PSP personnel and ultimately secured an aggregate damages award of $102,701.00.  He now seeks an order awarding his counsel as much as $849,557.44 in fees and $19,742 in costs, to be paid by Defendants pursuant to the fee shifting statutes applicable to civil rights and employment discrimination actions such as this.  For the reasons set forth below, the fee request shall be granted in part.

## I.  BACKGROUND

  Holt initiated this litigation in October 2010, when he first brought suit against the Commonwealth with respect to the actions of two PSP officials whom he also named as individual defendants: Krystal Turner-Childs ("Turner-Childs"), the Director of EEO Operations for the PSP; and Capt. Steven Johnson ("Johnson"), who made work assignment decisions for the PSP through

June 2009 at its Reading barracks and was involved in an internal investigation against Holt. The complaint asserted claims under Title VII of the Civil Rights Act of 1968 ("Title VII"), the Pennsylvania Human Relations Act ("PHRA"), and 42 U.S.C. § 1983, based upon work assignments not given to him, investigations undertaken against him, and the alleged inadequate handling of his workplace complaints.

Holt was given leave to amend his complaint twice. His Second Amended Complaint, filed on December 1, 2011 (Doc. 30), ultimately controlled the litigation thereafter. In that complaint he added two new defendants and claims concerning subsequent events in the workplace. These claims were of race discrimination and retaliation against Lt. Gerald Brahl ("Brahl") and Capt. Kathy Jo Winterbottom ("Winterbottom") based upon his assignment to particular stations, his consideration for station command posts in 2011, and the initiation of investigations taken against him that he believed were not properly handled.

We denied a pre-trial defense motion for summary judgment in September 2013 and the case proceeded to trial before a jury beginning on October 30, 2013. At the close of the presentation of all the evidence, the defense moved for judgment in favor of Defendant Turner-Childs under Fed. R. Civ. Pro. 50(a), which we granted. There were no further claims that proceeded against her, and judgment was entered in her favor. (Doc. 89.)

The jury's deliberation on the remaining claims in this first trial resulted in a verdict on only two counts, both of which named Brahl. By their verdict, the jury determined that Brahl discriminated against Holt on the basis of race in violation of the Equal Protection Clause when he made remarks about Holt at a PSP roll call, and that he retaliated against Holt in violation of his First Amendment rights when he initiated an IAD investigation for what was known as "the day off incident." The jury then awarded $25,000 in compensatory damages and $25,000 in

punitive damages to Plaintiff and attributed the entirety of those damage awards to the claim of race discrimination.  (Doc. 93.)   Following upon Defendants' Rule 50(b) motion, however, we granted Brahl judgment as a matter of law on that claim.  Given this circumstance, and in light of the jury's finding of retaliation by Brahl, we entered an award of $1.00 in nominal damages in favor of Holt in recognition of the verdict in his favor on the First Amendment claim.  (Doc. 134.)

By the time the claims were re-tried in October 2014, we had ruled that defendants were entitled to judgment as a matter of law on certain claims yet left many others in place.  The jury at that second trial was able to resolve all counts before it.  It returned a defense verdict on the counts of race discrimination under the Equal Protection Clause against Johnson as well as counts of race discrimination under Title VII and the PHRA against the PSP and Johnson.  It found in favor of Holt, however, on the remaining claims: race discrimination in violation of the Equal Protection Clause by Brahl for a different incident than that upon which the 2013 jury returned a verdict; two actions by Winterbottom that the jury found constituted both race discrimination in violation of the Equal Protection Clause and First Amendment retaliation; and retaliation by Johnson in violation of Title VII and the PHRA.   In the aggregate, the jury awarded $1,975,000 in damages against the individual defendants, of which $950,000.00 was compensatory and $1,025,000.00 was punitive for the § 1983 claims against Brahl and Winterbottom where such damages were available.  (Docs. 169, 170.).

Defendants moved for judgment as a matter of law and, in the alternative, sought a new trial on damages.  On August 19, 2015, we granted the motion in part, entering judgment in favor of Defendants with regard to the race discrimination claim against Brahl and one of the two Equal Protection race discrimination and First Amendment retaliation claims against Winterbottom.  We also granted judgment as a matter of law in favor of Johnson with regard to the Title VII / PHRA

3

retaliation claim.  We denied, however, Defendants' motion for judgment as a matter of law on the race discrimination and retaliation claim for which the jury had awarded $200,000 in compensatory and $300,000 in punitive damages.  In the same opinion we conditionally granted Defendants'motion for a new trial as to this verdict unless Holt agreed to accept a remittitur to $100,000.  (Doc. 202.)  He accepted the remittitur. (Doc. 208.)

Plaintiff then appealed the adverse judgments to the Court of Appeals, where we were sustained on all pending claims save only our order granting judgment as a matter of law in favor of Johnson on the Title VII and PHRA retaliation claims.  As the Court of Appeals noted in its March 20, 2017 decision, however, that verdict of $250,000 had also been challenged by the defense as excessive, and on the defense motion for a new trial, we rendered a conditional ruling that Johnson would be entitled to a new trial if Plaintiff did not accept a remittitur that would result in an award of $50,000 – a ruling that had not been challenged on appeal.  Accordingly, upon remand from the Court of Appeals, we presented to Plaintiff the option of a new damages trial on this count or the award of $50,000.  (Doc. 217.)  He chose a new trial.  (Doc. 218.)  A third trial was then held to address the discrete question of damages for the retaliatory acts of Johnson that were addressed in that particular Title VII / PHRA claim.  On August 10, 2017, that jury awarded $2,700 in damages.  (Doc. 240.)  Plaintiff again appealed to the Court of Appeals, but a unanimous panel of that court affirmed on August 2, 2019.  (Doc. 271.)

With the resolution of the trials and appeals, we now consider Plaintiff's petition for counsel fee, which was last addressed by Plaintiff in a supplemental petition filed on August 14, 2019.  (Doc. 272.)  This supplemental petition followed upon his initial petition, filed on November 18, 2014 (Doc. 173), which he replaced on September 1, 2015 (Doc. 203) to correct formatting problems in the timesheets attached to the original petition.  He also filed a supplemental petition

on January 21, 2018.  (Doc. 251.)  Defendant raised objections to Plaintiff's 2015 petition (Doc. 211) and filed a response to the 2019 supplement (Doc. 277), to which Plaintiff filed a reply (Doc. 278).1  In the interim, the parties also addressed certain mathematical and/or transcription errors present in Plaintiff's filings at Docs. 203 and 251.  *See* Ltr. from defense counsel, May 8, 2018. There remained, however, "significant disagreement on the reasonable hourly rate, reasonable amount of time for work completed, lodestar based upon the results achieved, and reasonableness of costs." *Id.* at 2.2

In his August 2019 submission, lead counsel for Plaintiff, Brian Puricelli, asks that all of his work in this case, from 2009 to 2019, be compensated at $750 per hour, a significantly higher rate than he sought in his earlier submissions.  He also requests that all of the work he billed from 2009 to 2015 for his former associate, Alexis Lehmann, nee Zafferes, be compensated at the rate of $450 per hour, which also reflects a significant increase from the hourly rates previously requested.  (Doc. 272 at 3.)  He asserts that the fee to which he is entitled is $849,557.44.  (*Id.*)  He also seeks costs totaling $19,742.  (*Id.*)

## II.   LEGAL STANDARD

Congress has authorized the district court to award "a reasonable attorney's fee" to the "prevailing party" in Title VII and Section 1983 suits.  *See* 42 U.S.C. § 2000e-5(k); 42 U.S.C. § 1988.  A reasonable attorney fee is one that is "adequate to attract competent counsel, but which do[es] not produce windfalls to attorneys." *Public Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995) (citations omitted).  The standards for the attorney fee award

---

1 We provide a chart of these filings at the beginning of Section III, *infra.*

2 This letter to the court from the parties requested referral to another magistrate judge for a settlement conference to address these issues.  The referral was made, but regrettably did not result in a resolution of this dispute.

under the two statutes are identical. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983). The party seeking the fees bears the burden of proving the reasonableness of the request. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). The Supreme Court has instructed that "[t]he most useful starting point" for determining the amount of "a reasonable fee" is the number of hours reasonably expended multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. The party opposing the fee request then has the burden to challenge, "with sufficient specificity to give fee applicants notice," the reasonableness of the requested fee. *Rode*, 892 F.2d at 1183. Once the opposing party lodges objections to the petition, the district court enjoys "a great deal of discretion" to adjust the fee award in light of the objections. *Id.*

The United States Supreme Court and our Court of Appeals have offered guidance on how to determine if hours were "reasonably expended" and whether the requested hourly billing rate is reasonable. *See, e.g., Hensley*, 461 U.S. at 433; *Rode*, 892 F.2d at 1183. The district court may exclude as hours not reasonably expended time spent litigating claims on which the plaintiff did not succeed and that were "distinct in all respects from claims on which the party did succeed." *Rode*, 892 F.2d at 1183.[3] The district court is precluded, however, from decreasing a fee award based upon factors not raised at all by the adverse party. *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720; *Loughner v. University of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001).

After the district court determines the figure that is the product of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," *Hensley*, 461 U.S. at 433, further analysis may still be necessary. As the Court explained, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the

---

[3] Alternatively, as we discuss below, the district court has the option of accounting for the degree of success obtained by adjusting downward the figure produced by the multiplication of hours expended by the hourly rate.

important factor of the 'results obtained,'" which "is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.* at 434. As the Court recognized, if the plaintiff achieved "only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436. The Court noted that "[t]his will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* As the Court explained:

> Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

*Id.* The Court acknowledged that "[t]here is no precise rule or formula for making these determinations," and gave district courts the option to "attempt to identify specific hours that should be eliminated" or to "simply reduce the award to account for the limited success." *Id.* at 436-37. *See also id.* at 437 (noting that the district court "necessarily has discretion in making this equitable judgment" but must exercise its discretion in light of the considerations identified in the opinion).

Similar options are available to the district court at the other end of the spectrum: where the plaintiff seeks an upward adjustment to the lodestar. The Court has repeatedly re-affirmed the primacy of the lodestar approach in federal fee-shifting statutes, noting that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee," "that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation," and that "the burden of proving that an enhancement is necessary must be borne by the fee applicant." *Perdue v. Kenny A. ex rel. Winn*, 130 S Ct. 1662, 1673 (2010) (quotations omitted). The Court recognized in *Perdue* that "an enhancement may be appropriate if the attorney's performance includes an extraordinary outlay of *expenses* and the litigation is exceptionally

7

protracted" but that such an enhancement "must be reserved for unusual cases," as any attorney who agrees to represent civil rights plaintiffs "presumably understands that no reimbursement is likely to be received until the successful resolution of the case[.]" *Id.* at 1674 (emphasis added). The Court also recognized that an enhancement might be warranted where there was "exceptional delay in the payment of *fees*." *Id.* (emphasis added). Again, however, the Court recognized that "[a]n attorney who expects to be compensated under § 1988 presumably understands that payment of fees will generally not come until the end of the case, if at all." *Id.* The Court noted that "[c]ompensation for this delay is generally made 'either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.'" *Id.* (quoting *Missouri v. Jenkins*, 491 U.S. 274, 282 (1989)). While it "[did] rule out the possibility that an enhancement may be appropriate where an attorney assumes these costs in the face of unanticipated delay, particularly where the delay is unjustifiably caused by the defense," *id.*, it counseled that the enhancement should be calculated by applying a method that was "reasonable, objective, and capable of being reviewed on appeal, such as by applying a standard rate of interest[.]" *Id.*

## III.   DISCUSSION

It is undisputed that Holt is a "prevailing party" within the meaning of Title VII's attorney's fees provision and Section 1988. 42 U.S.C. § 2000e-5(k); 42 U.S.C. § 1988. Plaintiff has secured a judgment on the merits and obtained an aggregate award of $102,701 for the claims under Title VII and the PHRA against Johnson, under the Equal Protection Clause and the First Amendment against Winterbottom, and under the First Amendment against Brahl. The question then becomes what amount of attorney's fees would be reasonable under the circumstances to attract competent counsel to these cases yet not produce a windfall to the attorneys. *See Public Int. Research Group of New Jersey*, 91 F.3d at 1185.

Our analysis describes and addresses the following filings of the parties:

| Plaintiff petition (Doc. No., Date) | Time period covered, which attorneys | Defendants' response (Doc. No., Date) | Plaintiff's reply (Doc. No., Date) |
|---|---|---|---|
| Doc. 173 (11/18/2014) Replaced by Doc. 203 | December 1, 2009 to November 12, 2014 (Puricelli and Lehmann) | Doc. 175 (11/26/14) Objection to illegible formatting of time records | |
| Doc. 203 (9/1/2015) *"First Petition"* | December 1, 2009 to August 14, 2015 (Puricelli and Lehmann) | Doc. 211 (10/28/2015) | |
| Doc. 251 (1/21/2018) *"Second Petition"* | August 19, 2015 to January 16, 2018 (Puricelli) | None | |
| Doc. 272 (8/14/2019) *"Third Petition"* | N/A – no billing records attached | Doc. 277 (9/11/2019) | Doc. 278 (9/23/2019) |

Consistent with the authorities described above, we will approach Plaintiff's fee request first with an analysis of the Defendants' objections to time expended by Plaintiff on claims as to which Defendants contend Plaintiff was not a prevailing party. In this process we will determine the hours reasonably expended by Attorneys Puricelli and Lehmann that led to Plaintiff's degree of success. Next we will address what billing rates are reasonable as to the efforts of the two attorneys and calculate the lodestar. We will then consider the propriety of any adjustments to the lodestar in light of the degree of Plaintiff's success and other factors. Finally, we will address the costs sought by Plaintiff.

### A.    Hours reasonably expended

The starting point in determining the amount of a reasonable fee is to determine the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. Time may be excluded from this calculation if: (1) the hours were spent "litigating claims on which the party did not succeed and that were distinct in all respects from the claims on

which the party did succeed"; (2) the hours are "excessive, redundant, or otherwise unnecessary"; or (3) the fee petition "inadequately documents" the hours claimed.  *Rode*, 892 F.2d at 1183 (internal quotations omitted).  Defendants must, however, provide "sufficient specificity to give fee applicants notice" of their objections to the hours billed; a conclusory statement that the number of hours worked is unreasonable will not suffice. *Rode*, 892 F.2d at 1183.  We are mindful that a district court "may not reduce an award *sua sponte*" but must instead do so "in response to specific objections made by the opposing party." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005).

We will review Defendants' objections in light of *Rode*'s three examples of time that would *not* be considered "reasonably expended."  We note in this regard that Defendants' response to Plaintiff's First Petition provided specific objections to Plaintiff's billing records, which covered the period from December 2009 to August 14, 2015.  *See* Doc. 211 (response) and Doc. 203 (petition).  Defendants did not file an objection to the Second Petition that Plaintiff submitted at Doc. 251, which covered the period from August 19, 2015 to January 16, 2018 and documented hours expended only by Attorney Puricelli.  Plaintiff's Third Petition did not contain itemized time entries – although it purported to do so[4] – and Defendants' response thus could not make objections to specific entries.[5]  Defendants argued generally, however, that no time spent by Plaintiff's counsel after the filing of the First Petition should be compensable because counsel's work

_____

[4]  The Third Petition stated that timesheets and a Declaration of Puricelli were appended as Exhibit A, and that details of costs in the amount of $8,975.40 was appended at Ex. A, Attachment 2.  *See* Doc. 272 at 15-16.  **No exhibits or attachments, however, appear in this filing.**  *See also id.* at 18 (referring to CLS schedule as Exhibit B, which was not attached).

[5]  Defendants suggested the Third Petition be denied, even if only without prejudice, to allow Plaintiff to re-submit the petition.  In none of his subsequent filings including the reply brief, however, did Plaintiff seek leave to amend his fee petition to correct this deficiency.

thereafter – from August 2015 onward – "achieved no net beneficial result," where Holt's ultimate additional recovery of $2,700 was substantially less than the $50,000 remittitur offered to him. *See* Doc. 277 at 11, 13-14.

### 1.     Hours spent litigating claims on which Plaintiff did not succeed

Some of Defendants' objections arise from their position that attorney fees should not be recoverable for time spent on claims on which Holt did not prevail.  Defendants seek both to excise entries that were specific to work on claims against individual defendants against whom Holt did not obtain a judgment, *see, e.g.,* Doc. 211 at 13 (seeking disallowance of time spent at deposition of Defendant Turner-Childs), and to eliminate time spent pursuing the claim against Johnson post-appeal, where Plaintiff rejected an offer of a judgment that turned out to be more favorable than what he ultimately recovered from the jury.  *See* Doc. 277 at 11-12.

### a)     Prevailing defendants

We accept the propriety of excluding time entries for tasks that were specific to a particular defendant against whom Plaintiff did not prevail on any claims.  While all of Holt's claims concerned his employment with the PSP, they arose from different incidents and alleged adverse employment actions.  Plaintiff ultimately prevailed on claims against three different defendants against whom awards were rendered at different times.  It is thus difficult to determine how much time within particular tasks completed by Plaintiff's counsel were allocated to particular claims or legal theories.  This can be accomplished to some extent, however, with reference to the time spent exploring the conduct of a particular defendant who ultimately prevailed completely – here, Defendant Turner-Childs.  She was dismissed from the suit in November 2013.  *See* Doc. 211 at 13.  We therefore exclude the following entries:

| Date | Timekeeper | Time to eliminate (hours) | Task |
|---|---|---|---|
| 4/21/11 | AL | 1.0 | Review Childs answer to complaint |
| 2/22/12 | AL | 3.0<br><br>1.0 | Deposition of Kristal Turner-Childs;<br><br>Travel time to same |
| 12/9/12 | AL | .5 | Review Childs answer to second amended complaint |
| 10/16/13 | AL | 1.5 | Review Childs deposition transcript |

While Plaintiff did not prevail on several other claims, the remaining hours that counsel expended involved claims involving defendants against whom he did prevail on *some* legal theory: Johnson, Winterbottom, and Brahl.  Except as we set forth below, it is not feasible for us to separate out the time spent "litigating claims on which [Plaintiff] did not succeed and that were distinct in all respects from the claims on which [Plaintiff] did succeed." *Rode,* 892 F.2d at 1183.  We thus overrule Defendants' objections contained in Doc. 211 as to time spent litigating claims against the other defendants.[6]

**b)      Litigation of claims against Johnson**

The other area in which Defendants argued for broad reductions in the compensability of the hours worked by Plaintiff's counsel concerned the litigation of the remaining claim against Johnson, which was all that remained to be resolved for Plaintiff following the Third Circuit remand decision in March 2017.  Defendants made two arguments: one that none of Plaintiff's counsel's work *after September 2015* is compensable; and, alternatively, that none of the work

---

[6] We note that Defendants' objections at Doc. 211 also focused principally on tasks involving Defendant Johnson, as he appeared to have escaped liability at the time Defendants responded to the First Petition.  Subsequent to the filing of the First Petition, however, the verdict against Johnson was reinstated in part by the Third Circuit.  Therefore, many of Defendants' arguments in Doc. 211, at least as they concern Plaintiff's measure of success and the initial judgment in favor of Johnson, are inapposite.

performed *after March 2017* is compensable.  Both of these arguments attempt to apply the notion of "prevailing party" status to one or more of these final phases of Plaintiff's case.

We first consider Defendants' argument concerning the claim sought for hours worked since March 2017.  They analogize the posture of the litigation to a plaintiff's rejection of a Rule 68 offer of judgment in favor of continued litigation,[7] arguing that "[t]he remittitur here operated similarly to an offer of judgment," because if Plaintiff had accepted the $50,000 judgment against Captain Johnson that was available to him in April 2017, "the case would have been over and Plaintiff would have won a total award of $150,001" rather than the $102,701 that he ultimately collected after two more years of litigation.  (Doc. 277 at 13.)  *See also Marek v. Chesny*, 473 U.S. 1, 9 (1985) (noting that the Court may properly consider what plaintiff would have achieved by accepting a Rule 68 offer when determining if plaintiff succeeded on the merits).  On this basis, they contend that Plaintiff should not be able to shift to Defendants the costs incurred after the rejection of the available judgment in April 2017.  While we do not disagree that much time and expense could have been spared had Plaintiff accepted the remittitur, we are not prepared to embrace a mechanical application of Rule 68 here to block recovery for counsel fees that were expended.  Unlike in the setting of Rule 68, Plaintiff here was not on notice of any potential limitation of recovery of attorney's fees should he not recover from the jury an award exceeding

---

[7] Rule 68 shifts back to the plaintiff all costs incurred subsequent to the point at which an offer of judgment was made and where the ultimate recovery at trial did not exceed the offer of judgment. Inasmuch as § 1988 defines "costs" to include attorney fees, a § 1983 plaintiff who wins a final judgment that is not better than a Rule 68 offer generally cannot recover for the attorney's fees and costs that were incurred after the date the judgment was offered.  *See generally Marek v. Chesny*, 473 U.S. 1, 9 (1985).

the remitted amount.  Accordingly, we decline Defendant's suggestion that we eliminate from the lodestar calculation the hours expended after the April 2017 remittitur.[8]

Alternatively, Defendants have asserted broadly that "no additional fee or cost award would be appropriate" with respect to work performed after September 2015 when the First Petition was filed.  (Doc. 277 at 11-12.)  Defendants take the position that Holt "is not a prevailing party on any issue litigated after the [2015] fee petition" and that time spent on Plaintiff's appeal from the second trial should not be eligible for purposes of recovering attorney's fees and costs, as the work of Plaintiff's counsel during that time "achieved no net beneficial result."  (Doc. 277 at 11-12 & § B.)  They argue that "any arguable success" thereafter was "in spite of and not because of counsel's efforts," (*id.*), and that Holt "was not a prevailing party in obtaining the remittitur on appeal because he elected to *reject* the remittitur."  (*Id.* at 13.)  Defendants also argue that during this time "Plaintiff's own decisions unnecessarily extended this litigation to his own detriment[.]" (*Id.* at 12.)  We are not persuaded by this reasoning and find that Plaintiff "prevailed" in securing a judgment in his favor against Johnson, regardless of whether he accepted the remittitur or pursued the new trial on damages.

Finally, Defendants also argue that counsel's work did not contribute to the Third Circuit's reinstatement of judgment for Holt in that the appellate brief was noted to be so shoddy and the court required the parties to make additional written submissions to remedy the situation.  (*Id.*)

---

[8]  This sequence of events, however, could impact a court's consideration of any *downward adjustment* of the lodestar.  *See, e.g., Souryavong v. Lackawanna Cty.*, 159 F. Supp.3d 514 (M.D. Pa. 2016) (recognizing that Rule 68 offer did not preclude recovery of subsequent attorney fees expended in FLSA action but appreciating that the Rule 68 offer must be considered by the court in determining whether lodestar calculation of reasonable attorney fee was excessive and warranted a downward adjustment).  As we explain in § III.D.1 below, however, we ultimately concluded that the lodestar produced here did not require any downward adjustment.

We find Defendants' arguments in this regard better suited to our analysis of whether the hours of work reflected in Plaintiff's requests are excessive or whether a downward adjustment of the lodestar might be appropriate.  We do not believe this analysis should serve to cut off the recoverability of fees for any work performed after a certain date nor deprive Holt of his status as a prevailing party against Johnson.

### 2.     Excessive and redundant hours

Defendants claimed in their 2015 objections that the hours sought for Attorney Lehmann's work were subject to reduction because: (1) they were excessive; (2) hours billed at the attorney's hourly rate included "non-attorney work"; and (3) Plaintiff presented inaccurate time records, including an entry for work that was not actually performed.  (Doc. 211 at 10-11.)

Defendants claimed in their 2015 objections that Attorney Puricelli's hours should be reduced because: (1) they reflect overstaffing where Plaintiff sought to recover for Puricelli's time conferring with Attorney Lehmann (Doc. 211 at 28-29) or where his presence (e.g., at the second trial) was redundant (*id.* at 33); and (2) he billed for more hours of trial time than are reflected in the court transcripts (*id.* at 29-32).  In their only other response to Plaintiff's subsequent fee petitions, the 2019 response, Defendants did not make any arguments that the additional hours identified in the Second Petition were unreasonably incurred by Puricelli but rather that the sum sought as set forth in the Third Petition was "excessive," "unsupported by the record," and "plainly unreasonable in light of the judgment."  (Doc. 277 at 11.)[9]

Defendants also challenged as redundant time entries from both attorneys for conferencing (Doc. 211 at 17, 28-29), and for some events for which both attorneys billed and spent the same amount of time (Doc. 211 at 33-34).  We accept, however, that this representation was a joint effort

---

[9] Defendants did not file a response to Plaintiff's Second Petition in 2018.

and required collaboration between the experienced attorney and the newly-minted one to whom he was shifting major responsibility for the case.  We accept that the joint conferencing assisted Attorney Lehmann in proceeding as she did, where she appeared mostly as sole counsel on the second trial.  To be sure, Puricelli billed only 26.6 hours to the second trial and preparations for it, with 13.8 hours of that time spent on "strategy [and] prep" or "meeting[s]" with Attorney Lehmann.  We will accept this aspect of the billing as presented.

Defendants also challenged time entries for court proceedings that did not match defense counsel's recollection of the length of the proceeding.  *See, e.g.,* "settlement conference" listed for 6 hours on June 6, 2013; pretrial conference on October 28, 2013 listed for 6 hours; trial days from October 30, 2013 to November 7, 2013 listed for 12 hours with the description "(6:00 am – 6:00 pm)" except for one day listed for 8 hours.  (Doc. 211 at 19-20.)  We decline to adopt Defendant's suggestion that we reduce these time entries to match presumed times that the court convened and adjourned each day.  We accept that a young associate would put in a 12-hour day while on trial or preparing for imminent trial.  These entries during the trial appear to have been meant to encompass all tasks, as there were no other itemized entries for those days.  We appreciate also that counsel will have to spend time even to "re-review" deposition transcripts for a re-trial, despite having reviewed them before as part of trial preparation.  (*Id.* at 23.)  We will not second-guess the time spent in that regard.

There are many other objections lodged by Defendants that we effectively overrule by not discussing them.[10]  With respect to specific entries identified by Defendants that we *do* agree are excessive, we make the following **reductions**:

---

[10]  Some of Defendants' 2015 objections suffered from a lack of good judgment as well.  For example, at Doc. 211, p. 17, Defendants objected to time that was described in the time records as Attorney Lehmann "preparing testimony for defendants."  Defendants objected that no such time

| Date | Time-keeper | Time (hours) | Task | Where challenged by Defendants | Rationale for reduction or elimination of time |
|------|-------------|--------------|------|-------------------------------|-----------------------------------------------|
| 9/21/11 | AL | Eliminate 3.0 | Attend pre-trial conference | Doc. 211 at 11 | Did not actually attend[11] |
| 2/3/12 | AL | Reduce from 2.0 to 1.0 | Travel time to Plaintiff's deposition | *Id.* at 13 | We will compensate travel time at 50%. |
| 2/7/12 | AL | Eliminate 2.5 | Service of second amended complaint | *Id.* at 12 | Non-attorney task |
| 3/21/12 | AL | Reduce from 1.0 to .5 | Travel time to Winterbottom deposition | *Id.* at 13 | We will compensate travel time at 50%. |
| 3/23/12 | AL | Reduce from 1.0 to .5 | Travel time to Johnson deposition | *Id.* at 13 | We will compensate travel time at 50%. |
| 3/28/12 | AL | Reduce from 1.0 to .5 | Travel time to Brahl deposition | *Id.* at 13 | We will compensate travel time at 50%. |
| 6/22/12 | AL | Reduce from total of 48.0 to 16.0 | Review deposition transcripts and | *Id.* at 11-14 | Counsel could not have performed 48 |

should be allowed on the grounds that "any attorney is not allowed to prepare a witness's testimony and as plaintiff's counsel, she should not be preparing defendants' testimony." Of course. But we think it sufficiently clear that she meant to indicate she was preparing for her trial examination (or cross-examination) of defendants during the time of the first trial.

11 As to this billing entry, Defendants recount that:

> Not only did the conference not last three hours, Ms. Zafferes did not attend the conference. The Court had to contact her law office to inquire why she was not present at the conference. Mr. Puricelli answered the phone and indicated that she was unavailable[.]

Doc. 211 at 11.

| | | | prepare Plaintiff's response to MSJ | | hours of work on a single day.[12] |
|---|---|---|---|---|---|
| 10/24/13 | AL | Eliminate 4.0 | Deliver trial exhibits | *Id.* at 18 | Non-attorney task |
| 11/4/13 | BP | Eliminate 8.2 hours | "Subpoena delivery with server" | *Id.* at 30 | Non-attorney task |
| 10/20/14-10/22/14 | AL | Reduce from total of 10.0 to total of 6.5 | Review and file pre-trial memo, proposed jury instructions, interrogatories, and voir dire | Doc. 211 at 23-25 | Excessive time for simple tasks.[13] |
| | | | | | |
| **Aggregate hours reduced/ eliminated:** | **AL: 47.5** <br><br> **BP: 8.2** | | | | |

### 3. Hours allegedly inadequately documented

Defendants next complain that Lehmann's request includes time for what she indicates were 183 emails exchanged with her client between January 2011 and November 1, 2013, requiring .15 hours each, for a total time of 27.45 hours of work. Defendants assert that her line item for these communications "lack[s] the detail necessary to be compensated." (Doc. 211 at 15.) They take the same position with respect to another line item, with no time reference, for 131

---

[12] Presumably counsel actually performed these tasks and spent extensive hours over a period of days, and not on the single day, 6/22/12, as she listed. Elsewhere in the fee petition, for example, Plaintiff indicated that she spent a number of hours on the task of "legal research" over the period between 6/11/12 and 6/22/12. However, clearly we cannot approve 48 hours of time billed to a 24-hour day. We will reduce the number of hours approved to a number that allows for 8 hours spent on something other than preparing Holt's response to the defense motion for summary judgment.

[13] The submissions drafted and filed on these dates were largely identical to submissions from 10/23/13 for the previous trial. The revisions to the pre-trial memo should not have required 4 hours nor should the updates to the other documents have required 2 hours each.

emails exchanged with defense counsel, which she claimed were for .25 hours each, totaling 31.75 hours. (*Id.*) A similar billing entry found later in the submission of Plaintiff reflected "client correspondence/emails from 1/1/2014 – 8/25/2015" amounting to "25hrs." (Doc. 203-1 at 5.)

We understand that plaintiffs bear the burden of proof to show the reasonableness of the time for which they seek fees and must do so with sufficient specificity to enable defendants to make objections. While Plaintiff's counsel did not detail the dates of each and every client communication for which they seek payment, Defendants cannot seriously challenge that such communications were made and that counsel can reasonably bill for communications with the client. We therefore accept that Lehmann incurred 27.45 hours between January 2011 and November 1, 2013 and 25 hours between January 1, 2014 and August 25, 2015 for client correspondence. We decline to approve, however, Plaintiff's line item entry for 31.75 hours of Lehmann's time for correspondence with defense counsel, as there was no time period associated with this work and we thus cannot ensure that it is not double-billed.

Having accepted counsel's billings for client correspondence during *specified* periods of time, however, we cannot then also approve claims based on counsel's subsequent estimate of "additional time" for larger and overlapping periods of block billing for correspondence that Plaintiff requests in his Third Petition. *See* Doc. 272 at 23 (request for "additional time" in Third Petition, referring to an estimated 10 hours of email correspondence by Puricelli and 4.3 hours for Lehmann between 2010 and 2017 with client, opposing counsel, court, and co-counsel).[14]

---

[14] Plaintiff indicates that this "additional time" requested in the Third Petition does, in fact, pertain to some of the communications for which he sought reimbursement in the First and Second Petitions. Plaintiff effectively acknowledges having undercut his initial request and responds to Defendants' challenges to his time entries by seeking to re-inflate his hours for correspondence tasks performed "from November 2010 to 2015." *See, e.g.,* Doc. 272 at 23 (section entitled "time that was not added but should be now"); *id.* (explaining that because "the PSP made an issue of the time in 2015, some email communication time is now included for 2017," with "the time for

### 4.      Total number of hours reasonably expended

After removing the hours identified above as excessive or inadequately documented, we can determine the number of hours *reasonably expended* by Plaintiff's counsel.  As we do so, however, we note that Plaintiff characterized counsel's time as "non trial" or "trial / trial preparation," with different rates for those tasks.  *See, e.g.,* Doc. 203-1 at 4 (First Petition totaling Lehmann's "total time non trial" through first trial at $225/hr and proceeding to detail "trial / trial preparation @ $250/hr"); *id.* at 8 (listing Puricelli "attorney work time @ $275/hr." and "trial / trial preparation @$450/hr" in 2013).  While the differential in the trial and non-trial rate for Lehmann is minimal, Plaintiff's first two petitions sought reimbursement for Puricelli's time at quite different rates based on this characterization.  While we save our discussion of the appropriate rates for the next section of this Memorandum, we do here accept the notion that this work can be compensated at different rate structures and thus track Puricelli's trial and non-trial hours separately.  This has also been the approach of several colleagues when presented with fee petitions for Puricelli's work.  *See, e.g., Devore v. City of Philadelphia,* Civ. No. 00-3598, 2004 WL 414083 (E.D. Pa. Feb. 20, 2004) (Hart, M.J.); *McKenna v. City of Philadelphia*, Civ. No. 07-110, 2008 WL 4435939 (E.D. Pa. Sept. 30, 2008) (Ditter, J.); *Jones v. Pennsylvania State Police*, Civ. No. 16-4205, 2018 WL 2197226 (E.D. Pa. May 11, 2018) (Beetlestone, J.).

We recount by year the billed hours that were reasonably expended:

each email" now counted as "not less than .1 hours").  We see no reason to re-visit the time billed for these tasks during the time period covered by the First and Second Petitions.

| Year | Reasonable *trial / trial prep* hours billed for Puricelli | Reasonable *non-trial* hours billed for Puricelli | Reasonable hours billed for Lehmann | Total reasonable attorney hours billed |
|---|---|---|---|---|
| 2009 | 0 | 6.2 | 12.0 | 18.2 |
| 2010 | 0 | 2.25 | 11.65 | 13.9 |
| 2011 | 0 | 5.25 | 50.0 | 55.25 |
| 2012 | 0 | 3.00 | 61.4 | 64.4 |
| 2013 | 107.8 | 4.3 | 238.7 (includes 27.45 hours for correspondence between 1/1/11 and 11/1/13) | 350.8 |
| 2014 | 26.6 | .5 | 236.85 | 263.95 |
| 2015 | 2.5 | 34.65 | 110.0 (includes 25.0 hours for correspondence between 1/1/14 and 8/25/15) | 147.15 |
| 2016 | 0 | 77.00 | 0 | 77.00 |
| 2017 | 99.5 | 24.6 | 0 | 124.1 |
| 2018 | 0 | 28.3 | 0 | 28.3 |
| 2019 | 0 | 10.8 | 0 | 10.8 |

These hours will be utilized in the lodestar analysis in Section C, *infra*.

**B.    Reasonable rates**

We must next determine whether Plaintiff's requested hourly rates are reasonable. "Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community." *Rode*, 892 F.2d at 1183. This requires the court to "assess the experience

and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* The prevailing party has the burden of establishing, "by way of satisfactory evidence, in addition to the attorney's own affidavits … that the requested hourly rates meet this standard." *Loughner*, 260 F.3d at 180.

As reflected in the Third Petition, Plaintiff now seeks an award based upon a rate of $750 per hour for all of Puricelli's work performed in this litigation and $450 per hour for the work of Lehmann, dispensing with the trial vs. non-trial hour rate distinction used in the First and Second Petitions. (Doc. 272 at 3, 19.) Plaintiff argues that the increased rates he requests are justified in that counsel "obtained excellent results" and achieved "exceptional success." (Doc. 272 at 19 (quoting *Hensley v. Eckhart*, 461 U.S. 424, 435 (1983)).) We would not apply a "quality" enhancement to a billing rate except in a rare circumstance. *See Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1667 (2010). We do not view the end result of the litigation of this case to be particularly "excellent" or "exceptional" for Plaintiff. Moreover, for reasons we describe throughout this Memorandum, counsel's work in this case was not of the quality that it should warrant the "rare" treatment of being compensated above prevailing market rates.

Plaintiff also suggests that an increase in rates beyond prevailing market rates is warranted due to the lengthy duration of the case and concomitant delay in the consideration and adjudication of his fee petition. He proffers these requested higher rates as an alternative to his requested upward adjustment of 50%. We consider that rationale below and then address the rates we will apply to the lodestar analysis for each attorney's time.

### 1.    Current vs. historical rates

Plaintiff argues in his Third Petition that higher rates than those sought in the First and Second Petitions  should be applied to all time in the case in recognition of the amount of time that has passed since he first sought fees following the 2014 trial and when this petition is being adjudicated several years later.  Authorities permit district courts to account for delay "outside the normal range expected by attorneys who rely on Section 1988 for the payment of their fees" through an upward adjustment of a lodestar calculation.  *Perdue*, 130 S. Ct. at 1676.  Alternatively, however, the Supreme Court also permits district courts to adjust for delay of payment by basing the lodestar award on *current* market rates, or to adjust the historical rates to present value. *Missouri v. Jenkins*, 109 S. Ct. 2463, 2466 (1989).  *See also id.* (affirming district court's utilization of current hourly rates); *Lochren v. Suffolk*, 344 Fed. Appx. 706 (2d Cir. Sept. 3, 2009) (applying current hourly rates for counsel to compensate for delay).

We confess to some hesitancy in characterizing the delays in this case from the filing of the First Petition in 2014 to the present as "extraordinary."  They certainly could not fairly be said to be attributable to Defendants but were rather caused by multiple factors.[15]  At the same time, we appreciate that this case has extended over a longer period of time than many of counsel's comparable cases.  In the *Jones* case, for example, Puricelli was awarded a fee in May 2018 for a

---

[15] After the second trial concluded in late 2014 and the transcript was prepared, Defendants briefed legitimate and well-constructed post-trial motions.  We held oral argument in June 2015 and issued our comprehensive opinion in August 2015, which had the effect of reducing what had been a $1,975,000 verdict to a $100,000 verdict.  Plaintiff's subsequent appeal extended the litigation further, and while the appeal was ultimately successful in reinstating one verdict against Johnson, the appellate process took 18 months.  The Court of Appeals even noted in its opinion that the panel "struggled mightily in this case to understand which issues Holt has raised on appeal, even after holding oral argument and requesting two additional letters from the parties."  *Holt v. Pennsylvania*, 683 F. App'x 151, 153 (3d Cir. Mar. 20, 2017).  Although litigation then continued before us and again in the Court of Appeals until July 2019, this delayed resolution was attributable to Plaintiff, who opted to reject the offered remittitur and then pursued the third trial and second appeal, yielding only the final $2,700 judgment.

case in which he filed the complaint in August 2016.  We are therefore willing to make the adjustment permitted by the Supreme Court in *Perdue* and *Jenkins* by applying an hourly rate to counsel's work that would be considered more in line with *current* community billing rates rather than the historical rates from the year in which the work was performed.

### 2.      Community billing rates

Plaintiff has presented various sources of evidence to justify the rates he has sought in his various petitions.  At times, he has made reference to the fee schedules promulgated by Community Legal Services ("CLS") of Philadelphia, which compiles billing rates for local lawyers and reports averages based upon their years of experience.  Courts in this district typically consider the CLS schedule when determining a reasonable hourly rate in a lodestar analysis.   The parties have put into the record the CLS schedule that was effective September 12, 2014.[16]  We will consider that schedule as we determine reasonable hourly rates for counsel's work in this case.

---

[16] While Plaintiff purports to rely on CLS fee schedules, he did not, in fact, provide us with any such documentation.  Plaintiff's First Petition, Doc. 203, for example, makes reference to the CLS schedule at p. 14 and appears to indicate that the 2014 schedule was appended as "Exhibit G."  No such schedule, however, appears among the documents electronically appended to the document on ECF.  *See* 9/1/15 docket entry re: Doc. 203; Doc. 203-7 (appending in place of Exhibit G a copy of Order ECF Doc. 202).

The Second and Third Fee petitions, Docs. 251 and 272, similarly make reference to a CLS schedule, now the 2017 edition, which is purportedly appended as Exhibit B and allegedly supports an hourly rate for Puricelli of $620-$650.  (Doc. 251 at 16; Doc. 272 at 18.)  Again, no CLS schedule is appended to either filing.  What is found at Doc. 251-2, which the filing party, Puricelli, described on ECF as "CLS schedule," is what appears to be a self-produced chart bearing the title "filed pursuant to Rule 28(j) from counsel for Appellees Hourly Rates Awarded."  (Doc. 251-2 at 1.)  This document purports to reflect hourly rates approved by various federal judges in fee shifting cases between 2004 and 2013 for plaintiffs' attorneys and with reference to their years of experience, but it is not the CLS schedule.  The Third Petition does not actually contain any appended documents, although it purports to.  These errors and omissions in the very documents in which Plaintiff contends that his attorneys are worthy of hefty fees is somewhat ironic and yet not at all surprising.

Defendants, however, have placed into the record the CLS schedule that was effective September 12, 2014.  *See* Doc. 211-1.  We will utilize that data as we determine the prevailing rates in the community during this litigation.

### 3.      Puricelli

When Plaintiff first sought approval of a counsel fee, he sought a rate of $450 per hour for Puricelli and supported this request by appending: (1) a declaration of November 18, 2014 from Puricelli that documented court approval of hourly rates by his colleagues in the plaintiffs' bar, ranging from $450 (in 2011) to $300 (in 2003); and (2) an affidavit of Alice W. Ballard, dated November 20, 2014, that the hourly rate of $450 for Puricelli was well within the range of hourly rates of comparable attorneys.  (Docs. 173, 174 & 203-3.)[17]

The 2014 CLS schedule provided that someone with 16-20 years of experience would be expected to bill $435-505 hourly and that someone with 21-25 years of experience would be expected to bill $520-590 hourly.  Puricelli was in the first category when he started billing in this matter in December 2009, with 18 years of experience, and he was in the latter category, with 23 years of experience, at the time of the filing of the First Petition.[18]  Plaintiff's initial request for Puricelli's hourly rate at $450 (and $275 for some tasks) is thus not facially unreasonable based upon Puricelli's years of experience.

Plaintiff has submitted no documentation, however, to support an increase from those rates requested in his initial petitions to $750 per hour as he requests in his Third Petition.  He simply asserts that "[Puricelli] charges $750 an hour and has since 2016 for all work."  (Doc. 272 at 10.) Plaintiff has not averred that Puricelli has actually billed any paying client at an hourly rate of

---

[17]  As noted above, however, the accompanying time records, which Plaintiff updated and re-submitted with what we have designated his First Petition due to formatting defects in his November 2014 submission, sought $275 per hour for certain of Puricelli's tasks, such as conferences with Lehmann and review of her work outside of the trial setting.  (Doc. 203-1 at 8-10.)

[18]  According to publicly-available records, Puricelli was admitted to practice in Pennsylvania in November 1991.

$750 or that anyone, including any court authorizing an award in a fee-shifting case, has ever paid him at that rate. To be sure, we are aware of only one fee-shifting case in which he was awarded anything above $450 an hour. In that case, *Jones*, Puricelli sought to be compensated at $750 per hour for work performed from 2016 to 2018 and was awarded $635 per hour for trial work and $350 per hour for pre-trial work. The court set those rates as the most appropriate given the results obtained in that case, although the court later applied a 50% downward adjustment to the lodestar for limited success, where nine claims were pled, two claims were tried, and the plaintiff prevailed on only one of them. *Jones*, 2018 WL 2197226 at *5.

We take the best measure of the prevailing rate in the community for Puricelli's work to be the affidavit he provided from 2014 from another member of the Plaintiff's employment litigation bar, Alice W. Ballard. She attested that his then-requested rate of $450 rate was "within the range of hourly rates" of attorneys in the field with the level of Puricelli's experience and skill. *See, e.g.,* Aff. of Alice W. Ballard (Doc. 203-2). Accepting that a reasonable rate as of 2014 was $450 for Puricelli's trial work and $275 for his non-trial work as he advanced in his initial petition, we proceed to consider what rate would capture the *present* value of that work. We note that the CLS schedules reflect enhanced rates of $10-$15 for each year of experience and, in the periodic schedule revisions, some degree of inflation. We will utilize for Puricelli's time in our lodestar analysis a rate of $525 for trial work and $350 for non-trial work, which reflects an increase of $15 per hour per year between 2014 and 2019. Accordingly, for all time reasonably expended in this case by Puricelli, we will apply the trial rate of $525/hour and non-trial rate of $350/hour.[19]

---

[19] A lower billing rate as to "non-trial" tasks performed by Puricelli is justified due to the particularly poor quality of written work submitted to us. Our comprehension of his filings was often hampered by typographical errors and incomplete sentences. His submissions also reflected that he would routinely copy and paste from work product in other cases without then modifying his argument to the correct case before us. This practice is evident throughout his fee petition

### 4.     Lehmann

In the initial fee petition request, Plaintiff requested an hourly rate for Lehmann of $225 for non-trial work and "$250-$275" for trial work.  (Doc. 173 at 15; Doc. 203 at 15.)  Unlike the request as to Puricelli, Plaintiff did not submit an affidavit from any other practitioner attesting to the reasonable rate billed for an attorney of Lehmann's stature.  However, in his affidavit, Puricelli "assert[ed] … that the market rate for attorney [Lehmann] is between $250 and $300 an hour for work her work [sic] in the civil right [sic] / employment discrimination field."  (Doc. 173-2 at ¶ 25, dated Nov. 18, 2014).  He stated his belief that her achievement of an excellent result for the client justified a $300 hourly rate.[20]  (*Id.* ¶ 28.)  In the Third Petition, Plaintiff seeks to increase the hourly rate requested for Lehmann's time "from $300 to $450" on account of the passage of time since the fee issue was first presented.  (Doc. 272 at 3.)

In their 2015 response in opposition to Plaintiff's First Petition, Defendants suggested an hourly rate for Lehmann of $175 for work performed through the first trial and $200 for work from the second trial onward.  (Doc. 211 at 8.)  They indicated that the rate of $175 from the beginning of the case through the first trial "is consistent with the CLS Fee Schedule, effective June 23,

---

submissions here, which largely copied from his submissions in the *Jones* case and refer to parties and developments relevant to that case but not this one.  These problematic filings have led to unnecessary work for us and most certainly do not justify rates at the higher end of any applicable scale.  Our decision to set a lower rate as a "reasonable" billing rate for non-trial work is consistent with the approach of many of our esteemed colleagues, who have chided Puricelli over the years for his sloppy work.  *See, e.g., Devore v. City of Philadelphia,* Civ. No. 00-3598, 2004 WL 414083 (E.D. Pa. Feb. 20, 2004) (Hart, M.J.); *McKenna v. City of Philadelphia*, Civ. No. 07-110, 2008 WL 4435939 (E.D. Pa. Sept. 30, 2008) (Ditter, J.); *Jones v. Pennsylvania State Police*, Civ. No. 16-4205, 2018 WL 2197226 (E.D. Pa. May 11, 2018) (Beetlestone, J.); *Jones v. Pennsylvania State Police*, 2019 WL 6810430, *1 n.1 (3d Cir. Dec. 13, 2019).

[20]  At that time, the jury had just returned a substantial verdict aggregated at $1,975,000.  As we have noted above, by virtue of our Rule 50(b) decision in 2015 and following the third trial in 2017, Plaintiff's final aggregate recovery was $102,701.

2011," as to attorneys with 1-3 years of experience, although they did not append that fee schedule. (*Id.*)  They did, however, append the CLS schedule effective September 12, 2014 which reflected rates of $200-250 for attorneys with 2-5 years of experience, *see* Doc. 211-1, which supported their position that Lehmann should be compensated at $200 per hour for the second trial onward. In their response to the Third Petition, filed on September 11, 2019, Defendants asserted that there was no evidence to support an increase in Lehmann's rate from the earlier requested rates to $450 and that it should not be increased based only upon the passage of time, but they did not otherwise address what rate would be reasonable from that point in time.  (Doc. 277 at 10.)

According to publicly-available records, Lehmann has been licensed to practice in Pennsylvania since May of 2010.  The billing records before us here reflect that she began working on the case in late 2009.  (Doc. 203-1.)  Plaintiff seeks to shift to Defendants her work in this case only up to August 2015, the last date for which her billing records are provided.  We would accept Defendants' representation, based on the CLS schedule then in effect, that $175 would have been a reasonable rate in 2009 for her work.  Consistent with the practice reflected in the CLS schedule of billing at rates that increase by $10-15 per year of experience, we would expect that a reasonable rate for her in 2015 would have reached $235 by 2015 ($10/year increase over 6 years).  This progression also finds support in the rate applied to Lehmann's time in 2018 in the *Jones* case. *See Jones*, 2018 WL 2197226, at *5 (citing applicable CLS schedule and Lehmann's 5 years of experience when performing work in 2016 to justify rate of $250).

We find the hourly rates suggested by the CLS schedules for an attorney in the first five years of practice to be more than reasonable in this case.  Lehmann was on a steep learning curve in this litigation.  The tasks delegated to her by Puricelli, including handling almost the entirety of the second trial, were significant and consumed much time.  Her inexperience necessarily led to

the expenditure of this time.   Therefore, while we accepted most of her billing records as reasonable for someone with her limited experience, we must take care that her rate matches that level of experience.   We conclude that a rate of $235 for the entirety of the litigation strikes that proper balance and also accounts for the element of "delay" that we discussed above.   Finally, inasmuch as there was less of a disparity between the quality of Lehmann's trial and non-trial work than there was as to Puricelli, we will apply this single rate of $235/hour to all of her time.

C.      **Lodestar Calculation**

After reviewing the time entries and accounting for the exclusions above, we calculate the lodestar as follows:

| Year | Attorney hourly rate | Attorney hours worked | Sub-total | Running cumulative total |
|---|---|---|---|---|
| 2009 | BP trial: $525 | 0 | 0 | |
| | BP non-trial: $350 | 6.2 | $2,170.00 | $4,990.00 |
| | AL: $235 | 12.0 | $2,820.00 | |
| 2010 | BP trial: $525 | 0 | 0 | |
| | BP non-trial: $350 | 2.25 | $787.50 | $8,515.25 |
| | AL: $235 | 11.65 | $2,737.75 | |
| 2011 | BP trial: $525 | 0 | 0 | |
| | BP non-trial: $350 | 5.25 | $1,837.50 | $22,102.75 |
| | AL: $235 | 50.0 | $11,750.00 | |
| 2012 | BP trial: $525 | 0 | 0 | |
| | BP non-trial: $350 | 3.0 | $1,050.00 | $37,581.75 |
| | AL: $235 | 61.4 | $14,429.00 | |

| 2013 | BP trial: $525 | 107.8 | $56,595.00 | |
| | BP non-trial: $350 | 4.3 | $1,505.00 | $151,776.25 |
| | AL: $235 | 238.7 | $56,094.50 | |
| 2014 | BP trial: $525 | 26.6 | $13,965.00 | |
| | BP non-trial: $350 | .5 | $175.00 | $221,401.00 |
| | AL: $235 | 236.85 | $55,659.75 | |
| 2015 | BP trial: $525 | 2.5 | $1,312.50 | |
| | BP non-trial: $350 | 34.65 | $12,127.50 | $260,691.00 |
| | AL: $235 | 110.00 | $25,850.00 | |
| 2016 | BP trial: $525 | 0 | 0 | |
| | BP non-trial: $350 | 77 | $26,950.00 | $287,641.00 |
| | AL: $235 | 0 | 0 | |
| 2017 | BP trial: $525 | 99.5 | $52,237.50 | |
| | BP non-trial: $350 | 24.6 | $8,610.00 | $348,488.50 |
| | AL: $235 | 0 | 0 | |
| 2018 | BP trial: $525 | 0 | 0 | |
| | BP non-trial: $350 | 28.3 | $9,905.00 | $358,393.50 |
| | AL: $235 | 0 | 0 | |
| 2019 | BP trial: $525 | 0 | 0 | **Total:** |
| | BP non-trial: $350 | 10.8 | $3,780.00 | **$362,173.50** |
| | AL: $235 | 0 | 0 | |

This lodestar, $362,173.50, is presumed to be a reasonable fee. *See Rode*, 892 F.2d at 1183.

### D.     Lodestar Adjustment

The district court has the discretion to make adjustments to the lodestar to ensure that the fee awarded is reasonable.  *See Rode*, 892 F.2d at 1183.  In their 2015 response to the fee petition, Defendants sought a downward adjustment based on the limited success of Plaintiff's multiple claims.  (Doc. 211 at 34-36.)  For his part, Plaintiff now seeks an upward adjustment of 50% for all work, "or the $750 hourly rate" requested for Attorney Puricelli's hours based on his suggestion that counsel "obtained excellent results" and achieved "exceptional success."  (Doc. 272 at 19 (quoting *Hensley v. Eckhart*, 461 U.S. 424, 435 (1983)).)[21]

### 1.     Downward Adjustment

Courts may adjust a lodestar downward if the amount "is not reasonable in light of the results obtained."  *Rode*, 782 F.2d at 1183. A general reduction in this manner "accounts for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of the successful claims." *Id*. Our Court of Appeals instructs that such an adjustment "should be taken independently of the other adjustments and should be the first adjustment applied to the lodestar." *Id.*  We must not, however, reduce an attorney's fee award "to maintain some ratio between the fees and the damages awarded."  *Washington v. Phila. Cty. Court of Common Pleas*, 89 F.3d 1031, 1042 (3d Cir. 1996).

---

[21] Plaintiff also asserts in one of his submissions that an upward adjustment is warranted and that Attorney Puricelli's time should be paid at $750 per hour in that he helped Plaintiff recover "a quarter of a million dollar [sic]."  (Doc. 251 at 17.)  No such verdict, however, was rendered in Holt's case.  Rather, it appears that Puricelli lifted this text from his submissions to the court in *Jones*.

As we described above, Plaintiff also suggested that an enhancement was warranted due to the lengthy duration of the case and concomitant delay in the consideration and adjudication of his fee petition.  We addressed that concern, however, when we set the reasonable rate to be utilized in the lodestar analysis.

Defendants claim that a downward adjustment is warranted by the "limited success that Holt achieved in this action." (Doc. 211 at 35.)  We accept that Plaintiff ultimately prevailed on only single claims against Brahl, Winterbottom, and Johnson, whereas his pleadings asserted several other claims against the PSP and the four individual defendants for various alleged statutory violations of Title VII and the PHRA, as well as constitutional claims under various theories through 42 U.S.C. § 1983.  The recognition by two different juries of statutory and constitutional violations by three different defendant officers, however, is significant. Furthermore, we find that the lodestar amount is reasonable in light of the results obtained.  We will not apply the downward adjustment requested by Defendants.

### 2.  Upward Adjustment

District courts have limited discretion to adjust the lodestar upward.  The Supreme Court permits an upward adjustment "for delay in payment," enabling the court to apply "current rather than historic hourly rates" or another method that the district court finds appropriate.  *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989).  Our Court of Appeals has also endorsed an upward adjustment for quality of representation but "only in very rare circumstances where the attorney's work is so superior and outstanding that it far exceeds the expectations of clients and normal levels of competence."  *Rode*, 892 F.2d at 1184.  The party seeking the upward adjustment bears the burden of proving that an upward adjustment "is necessary to the determination of a reasonable fee."  *Blum v. Stenson*, 465 U.S. 886, 898 (1984).

We note at the outset that one of the bases upon which Plaintiff sought an upward adjustment was the fact that he will have been awarded counsel fee "years after the win."  (Doc. 272 at 7.)  An upward adjustment based on delay is essentially equivalent to an award of interest, and Plaintiff did not demonstrate how current interest rates would support an increase of the

magnitude he suggested.  As we set forth above, we exercised our discretion to account for the notion of "delay" by applying current rates to the entirety of the time that we counted in the lodestar analysis.  *See Missouri v. Jenkins*, 109 S. Ct. 2463, 2466 (1989).  Accordingly, we consider here only Plaintiff's remaining arguments.

First, Plaintiff argues that counsel has provided "exceptional service."  (Doc. 251 at 17.) We do not find any such justification for an enhancement of the fee award.  We cannot characterize this litigation as a "very rare circumstance" where counsel's work product was "so superior and outstanding" that it "far exceed[ed] … normal levels of competence."  *See Rode*, 892 F.2d at 1184. The consistently poor quality of the written submissions of counsel[22] undermines any claim to an upward adjustment based on work performance.

Second, he argues that an adjustment is warranted in light of Defendants' "frivolous and vexatious conduct" in asserting in 2019 that the Third Petition should be dismissed without prejudice, as Holt considers any objections made by Defendants in 2019 to have been untimely raised.  Plaintiff's protestation, which reflects a misunderstanding of the nature of Defendants' objection,[23] does not justify "a 100% enhancement" of Plaintiff's counsel fee, as he suggests in a

---

[22] For example, counsel's fee petition briefing here included data from and references to the *Jones* litigation.  *See* Doc. 251 at 13-14, 16-18 (referencing parties and claims from another of Attorney Puricelli's cases, *Jones*; copied from Civ. A. No. 16-4205 at ECF 83-1).

[23]  The objection filed by Defendants argued that the Third Petition was unreasonable and unsupported.  *See* Doc. 277 at 9-10 (noting that "no records or evidence is submitted to supplement this bald and excessive claim" that counsel fee should be increased from $284,000 sought in September 2015 to nearly $850,000 for work through January 2019).  Defendants suggested that Plaintiff be given an opportunity to remedy the deficiencies in his submission, which was why they suggested a dismissal of that Third Petition *without prejudice to re-file*.  Given that Plaintiff indeed failed to append to his Third Petition *any billing records* for the additional period of time for which he sought compensation, the concerns expressed by Defendants were not without basis. Moreover, they clearly were not suggesting that we deny Plaintiff a recovery of any counsel fee for any part of the litigation.

reply brief.  *See* Doc. 278-1 at 11.  We reject Plaintiff's argument or suggestion that he is entitled

to an upward adjustment based simply on Defendants' litigation of this fee petition.

    **E.**    **Costs**

    Plaintiff seeks $19,742 in costs and has provided some documentation in support of this

request.  *See* Docs. 203 at 1 & 203-4 (up to Sept. 1, 2015); Docs. 251 at 2 & 251-1 at 5 (Aug. 2015

– Jan. 2018).  In their response to the First Petition, Defendants objected that some of the items

included in Plaintiff's request are not recoverable under 28 U.S.C. § 1920, the provision that allows

a judge or clerk to tax enumerated costs upon the filing of a bill of costs by the prevailing party.

(Doc. 211 at 36-38).  They claim that the total allowable costs that could be shifted to them is

$3,128.31.  They also assert that some of the requests were not supported by Plaintiff with

sufficient evidence that the costs incurred were necessary for the case.  Plaintiff's subsequent

filings do not take up Defendants' suggestion that additional documentation of information is

required.  Rather, Plaintiff has continued to assert his entitlement to the costs originally claimed

and updated them in the Second Petition to reflect $10,372 in additional costs associated with the

third trial, principally a fee of $10,000 to an expert witness who ultimately did not testify at trial.

(Doc. 251-1.)

    We are not limited to approving the costs described in 28 U.S.C. § 1920, which in any

event, are typically taxed by the Clerk of Court upon the filing of a bill of costs.  We see it that

Section 1988, the PHRA, and Title VII authorize recovery of costs apart from what is permitted

generally by § 1920.  *See, e.g., Kuzman v. I.R.S.*, 821 F.2d 930, 933-34 (2d Cir. 1987)

("Identifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone

costs are generally taxable under § 1988 and are often distinguished from non-recoverable routine

office overhead, which must normally be absorbed within the attorney's hourly rate.").  Courts

considering the question of recovery of costs and expenses have looked to whether the costs were

reasonably incurred and are of the type "ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). Therefore, we will consider here the reasonableness of the costs incurred by Plaintiff's counsel and whether they are ordinarily charged to clients.

Plaintiff first identified costs in the First Petition, Doc. 203-1 (Sept. 1, 2015), to which Defendants raised certain objections in Doc. 211 (Oct. 28, 2015), specifically that certain costs were questionable and that mathematical formulations for copying costs, for example, were inaccurate. In his Second Petition, Doc. 251 (Jan. 21, 2018), Plaintiff responded to some of the criticisms lodged by Defendants in Doc. 211 as to counsel fees but did not address the challenges as to costs. Plaintiff also asserted additional costs in that Second Petition, to which Defendants did not then file any objection. Plaintiff's Third Petition, Doc. 272 (Aug. 14, 2019), did not include any itemized records and did not lay out any additional costs. Defendants filed a response to the Third Petition and asserted, *inter alia*, that "Plaintiff should not be permitted to recover the claimed costs in the Supplemental Memoranda," *i.e.,* the Second and Third Petitions. They specifically pointed to the $10,000 expert fee and other trial-related costs claimed at Doc. 251-5, the Second Petition. (Doc. 277 at 14.) Defendants again argue that any work related to the third trial is not recoverable, and further contend that "an expert fee of $10,000 is plainly excessive when the final recovery was $2,700." (*Id.*)

The carelessness of Plaintiff's counsel again has sown chaos and confusion here. Where he indicated "copying costs (13,282 x .30/page)," he identified the amount of $982.56. The correct amount for that equation, however, is $3,948.60, which is the amount associated in the next line item and attributed to "deposition – Plaintiff." It is difficult to trust the remainder of the costs list.

Was "subpoenas    103.78. copies – 150" properly associated with the figure $1,051.00 or did that figure reflect a different cost?  Counsel should not put a court through this.[24]

We are willing to extend the benefit of the doubt to Plaintiff's counsel that the costs reflected in Doc. 203-1 reflect a transposition somewhere of the cost listed and the amount but that the amounts listed were all incurred for the various reasons lists.  We therefore **approve** the following costs asserted by Plaintiff:

Doc. 203-1 (First Petition): Filing fee, service fee, copying costs (at $.30/page), depositions of Plaintiff and Defendants, legal research, subpoenas and copying costs, travel/parking, trial binders and copies, trial 1 transcript; for a total of **$9,494.31**; and

Doc. 251-1 (Second Petition): trial exhibit books, trial exhibit tabs, trial exhibit copies (at $.50/page); for a total of **$186.00**.

There are other costs that we cannot approve.  While photocopying costs are commonly passed on by firms to their clients, "paper" and "exhibit tabs" seem to be more of the sort of routine office overhead expenses that "must normally be absorbed within the attorney's hourly rate." *Kuzman v. I.R.S.*, 821 F.2d 930, 933-34 (2d Cir. 1987).  We will not include those expenditures in the total of reasonable costs to be passed to Defendants.

The more significant expense that Defendants challenge as unreasonable from the third trial, however, is a $10,000 expenditure for an expert report prepared on July 27, 2017.  *See* Doc. 277 at 14.  At that point, the case was limited to the question of damages flowing from Johnson's retaliatory decision in July 2009 to select other officers rather than Holt to fill open station

---

[24] We hoped that discrepancies in this area might have been among those addressed when counsel conferred and agreed to certain amendments to Plaintiff's fee petitions in the spring of 2018. Unfortunately, however, the "mathematical errors" addressed in defense counsel's correspondence of May 8, 2018 did not encompass costs.

command positions in the troop.  Plaintiff, however, apparently viewed the scope of the third trial to include broader questions, including his contention that the PSP should have promoted him to Lieutenant and that Johnson's decision in July 2009 regarding the station command assignments deprived him of that promotion.  The expert report Holt obtained from an economist purported to show the income and benefits that he would have enjoyed had he been promoted to the rank of Lieutenant "as of July 7, 2009," which the expert noted was "consistent with the date that Sergeant Holt was passed over for a position of Station Commander at either Jonestown or Schuylkill." (Barach Report at 4-5, Doc. No. 223-1 at 10-11.)  The calculations were also premised on Holt thereafter being further promoted to the rank of Captain in July 2014.  (*Id.*)

After the expert report was disclosed and objected to by Defendants, we determined that the expert's premises were based upon speculation and not any facts that could reasonably be found by the jury that was to hear the damages claim in the upcoming third trial.  We did not permit the expert to testify at trial, and the jury assessed damages without consideration of the question of Plaintiff's non-promotion to Lieutenant and Captain.  We cannot accept that a $10,000 expense to secure an expert report based upon faulty premises was an expense that was "reasonably incurred" at that stage of the litigation.  We will not shift this cost to Defendants.  *See also generally Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 714 (3d Cir. 2005) (finding that prevailing plaintiff had not justified time claimed by certain expert witnesses who testified at trial); *E.C. v. Sch. Dist. of Philadelphia*, 91 F. Supp. 3d 598, 615-16 (E.D. Pa. 2015) (finding same where plaintiffs did not provide evidence of expert's hourly rate).

We therefore **disapprove** the following costs asserted by Plaintiff:

| Cost | Amount | Where asserted | Rationale for disallowance |
|------|--------|----------------|----------------------------|
| Tabs | $34.90 | Doc. 203-1 at 1 | Office overhead expenses not ordinarily charged to clients |
| Paper | $26.99 | Doc. 203-1 at 1 | Office overhead expenses not ordinarily charged to clients |
| Expert witness report on economic damages | $10,000.00 | Doc. 251-1at 5 | Not sufficiently relevant to remaining issue for trial; was not permitted to be used by Plaintiff |

We will award **$9,680.31** to Plaintiff for costs.

## IV.  CONCLUSION

The Supreme Court has long held that the determination of fees "should not result in a second major litigation."  *Hensley*, 461 U.S. at 437.  More recently, it clarified its expectations as to the role of the district court in determining fees under statutes such as § 1988 and Title VII:

> But trial courts need not, and indeed should not, become green-eyeshade accountants. *The essential goal in shifting fees* (to either party) *is to do rough justice, not to achieve auditing perfection.*  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of "the district court's superior understanding of the litigation."

*Fox v. Vice*, 563 U.S. 826, 838 (2011) (citation omitted; emphasis added).

This petition has presented numerous challenges, with which we have struggled mightily to reach a just resolution.  Plaintiff's submissions, which understandably came in a piece-meal fashion as he received his favorable verdicts, were often inconsistent in their presentation.  Only

the first contained an affidavit justifying the billing rate for Puricelli as of 2014; no further evidence was offered as to his subsequent requested rates.  The first two, but not the third, of Plaintiff's fee petitions contained itemized time entries.   They sought lump sums for time spent on communications by counsel with Plaintiff, opposing counsel, and the court.  Plaintiff's final submission requests that a vastly increased hourly rate be applied to the whole of the litigation (as to Puricelli's time, at least), without any justification for the magnitude of that increase, nor any alternative presented to better account for any lost value of that money over time.  Counsel's requests have shown no awareness of how they compare to the client's recovery nor the extent to which delays in resolution of his appeals and of this petition have been hampered by the sloppy presentation by counsel.

We have endeavored to do better than "rough justice" in resolving this final component of this decade-long litigation.  We have applied our understanding and overall sense of the litigation as we considered the reasonableness of time expended and the attorney billing rate that would be considered reasonable under the circumstances, including adjusting the rates to account for the length of the litigation.  We agree that the lodestar reflected a reasonable fee.  Our order awarding $362,173.50 in fees and $9,680.31 costs, for a total of $371,853.81, is being filed this date.